**UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA, AFL–CIO, LOCAL 102, an unincorporated association, and United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO, Local 227, an unincorporated association, Plaintiffs,**

v.

**LEE RUBBER & TIRE CORPORATION, a corporation, Defendant.**

**No. C 1052–63.**

United States District Court
D. New Jersey.

June 16, 1967.

Rothbard, Harris & Oxfeld, by Abraham L. Friedman, Newark, N. J., for plaintiffs.

Yauch & Fagan, by Frank J. Peterpaul, Newark, N. J., for defendant.

## OPINION

SHAW, District Judge.

This action was brought by plaintiffs to compel defendant to submit certain grievances to arbitration.[1] Jurisdiction is alleged pursuant to § 301 of the Labor Management Relations Act, 29 U. S.C. § 185 and 28 U.S.C. §§ 1331 and 1337.[2] The matter is now before the Court on cross motions for summary judgment. It is submitted on stipulation of fact, briefs, proposed findings of fact and conclusions of law and the pleadings. The pertinent facts may be summarized as follows:

United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO Local 102 (Local 102) was a party to a collective bargaining agreement with defendant dated July 3, 1961 and expiring on June 30, 1963.[3] By virtue of the agreement Local 102 was the collective bargaining agent for employees of defendant at its plant in Youngstown, Ohio. The collective bargaining agreement included a provision for arbitration of grievances which, in pertinent part, reads as follows:

(1) In the event that disputes or grievances, except those involving general or departmental wage increases or decrease, have not been adjusted to the satisfaction of the parties as outlined elsewhere herein, then such unsettled grievances or disputes may be submitted to a board of arbitration in the following manner.

(2) The party so desiring arbitration shall, within 30 days of the date of the Company's final reply made under the grievance procedure, frame the question to be arbitrated, referring specifically to the provision to be interpreted, or the provision which has been allegedly misapplied wherever applicable, notify the other party in writing, and within five days the Union shall designate its representative and the Company shall designate its representative. These two shall mutually select the third member of the Board. In the event that the third member cannot be mutually agreed upon within ten days after filing of notice to arbitrate, then the two arbitrators shall jointly request the AMERICAN ARBITRATION ASSOCIATION, 9 Rockefeller Plaza,

---

1. By amended complaint plaintiffs seek as alternate relief in award of damages.

2. Federal diversity jurisdiction is also suggested by amendment of the original complaint. An unincorporated labor union is not a citizen of a State for purposes of federal diversity jurisdiction. United Steelworkers of America, AFL-CIO v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965).

3. Provision for yearly renewal in the absence of written notice by either party is not pertinent to any issue presented here.

New York, N. Y., to appoint the Chairman of the Board of Arbitration.

\* . \* \* \* \* \*

(4) A majority decision of the Board shall be rendered within 10 days of the submission of all evidence and shall be final and binding upon both parties.

United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO Local 227 (Local 227) was a party to a collective bargaining agreement with defendant made on June 30, 1961 and expiring June 30, 1963. (As with the Local 102 agreement, the provisions for annual renewal notice are not pertinent to any issue here.) By virtue of the agreement, Local 227 was the collective bargaining agent for employees of defendant at its Conshohocken plant in Pennsylvania. This agreement also provided for arbitration of disputes, the pertinent language of which is quoted as follows:

> In the event a complaint, grievance or dispute filed by either of the parties to this agreement remains unsettled . .. ., either party may within two (2) weeks thereafter notify the other party in writing of its desire to submit the matter to a Board of Arbitration in the following manner:

> Within five (5) working days from the receipt of such notice the parties will meet and have an understanding of the question or questions to be submitted for arbitration and each party shall, at such meeting, submit to the other party the name of its arbitrator. The two arbitrators so chosen shall within three (3) days jointly request the American Arbitration Association, Philadelphia, Pa., to appoint the Chairman of the Board of Arbitration. The Arbitration Board so selected shall fix a hearing date, meet and consider the complaint, and, if possible, render a decision within two (2) weeks after completing hearing, which decision shall

be final and binding on all parties. The Arbitration Board may interpret this agreement and apply it to the particular case presented to it, but shall, however, have no authority to add to, or subtract from or modify the terms of this agreement.

On September 28, 1961 defendant and Local 102 entered into an agreement entitled "Employee Welfare Benefit Programs—Republic Rubber Division" effective during the period from July 1, 1961 to June 30, 1966. This agreement contained a provision that "In the event any dispute shall arise, as to whether the Employer has provided the insurance benefits hereinabove described, such dispute shall be subject to the grievance procedure of the General Agreement between the parties hereto, including arbitration."

Local 227 entered into an agreement with defendant entitled "Agreement for Pension, Service Award and Insurance Benefits" the term of which was for the period from July 1, 1961 to June 30, 1966. It also contained a provision for arbitration which reads as follows: "In the event any dispute shall arise based on the question whether the Company has provided the insurance benefits hereinabove described, such dispute shall be subject to the grievance procedure of the Working Agreement *then in effect,* including arbitration; omitting, however, all steps preceding presentation of the grievance to the Personnel Department of the Company." (Emphasis supplied.)

After the collective bargaining agreements above mentioned expired on June 30, 1963, there was a strike at each of defendant's plants. During the time of the strike a dispute arose between defendant and plaintiffs as to defendant's obligations under the welfare agreements above mentioned.[4]

Defendant sent a letter to Local 102 on August 29, 1963 stating that as of September 30, 1963 it would discontinue payment of premiums to assure continued

---

4. The strike at the Republic Rubber Division plant was settled. The record does not indicate whether the strike at the Conshohocken plant was ever settled.

coverage for sickness and accident benefits and supplemental workmen's compensation benefits for which provision was made by Articles III, IV, and V of the Welfare Benefit Agreement.

On September 10, 1963 Local 102 presented the following grievance to the Personnel Department of defendant:

The Union protests the action of the Company in refusing to provide the Accident and Sickness Benefits and the Supplemental Workmens Compensation Benefits for its Employees as provided in Part V of the Employees Welfare Benefit Agreement dated September 28, 1961. The Union also protests the announced intention of the Company to terminate on September 30, 1963, the Life Insurance and Accidental Death and Dismemberment Insurance and the Hospital, Surgical and Medical Benefits for its Employees and their Dependents, as this coverage is provided in Parts III and IV respectively of the agreement. The Union requests the Company to provide the benefits for its Employees and their Dependents for the duration of this Employee Welfare Benefit Agreement.

It seems, according to the stipulation filed, that after a collective bargaining negotiation session between defendant and Local 227 held on July 30, 1963, defendant made known to Local 227 its views with respect to its obligations under the agreement for pension and insurance benefits and that as a consequence of what occurred then, Local 227 presented a grievance on August 21, 1963 in the following form:

Mr. J. J. Conway Sr.
Personnel Director
Lee Rubber & Tire Corp.,
Hector Street
Conshohocken, Penna.

Dear Mr. Conway:

In accordance with Article III, Section 3, paragraph F, of the Pension and Insurance agreement, the Union hereby submits a grievance; protesting the Company's failing to continue to provide life insurance coverage for its members. The Union requests that this grievance be processed through the established grievance procedure at the Personnel Department level, as provided for in the Pension and Insurance Agreement.

GRIEVANCE No. 209

The Union feels that the Company has failed to live up to the Pension & Insurance Agreement dated the 30th day of June 1961, in that the Company has informed the Union that life insurance coverage will not be provided for the members of the bargaining unit subsequent to July 31, 1963. (with the 31 day automatic extension, benefits are apparently to be provided until the last day of August, 1963.)

In accordance with Article III, Section III, paragraph F, of the Pension & Insurance Agreement, the Union requests relief in the form of having the Company either provide this coverage through the medium of an insurance contract, or failing that, that the Company assume liability for any such benefits due to members of the bargaining unit.

The foregoing grievance or protest was reiterated by Local 227 on September 17, 1963 in the following language:

Dear Mr. Conway:

In accordance with Article III, Section III, paragraph F, of the Pension, Service Award and Insurance Benefits Agreement, dated June 30, 1961, the Union hereby submits a grievance; protesting the Company's termination of certain welfare benefits and its announced intention to terminate other welfare benefits on September 30, 1963.

The Union requests that this grievance be processed through the established grievance procedure at the Personnel Department level, as provided for in the Pension, Service Award and Insurance Benefits Agreement.

GRIEVANCE No. 259

The Union protests the action of the Company in refusing to provide the

Accident and Sickness Benefits and the Supplemental Workmen's Compensation Benefits for its Employees as provided in Article III, Section I, paragraph D and Article IV respectively, of the Pension, Service Award and Insurance Benefits Agreement, dated June 30, 1961. The Union also protests the announced intention of the Company to terminate on September 30, 1963, the Hospital, Surgical and Medical Benefits for its Employees and their Dependents and the Life Insurance and Accidental Death and Dismemberment Insurance, as this coverage is provided in Article III, Section I, paragraphs A, B, and C and Article III, Section II respectively, of the Agreement.

The Union requests the Company to provide the benefits for its Employees and their Dependents for the duration of this Pension, Service Award and Insurance Benefits Agreement.

It is the position of defendant that the alleged grievances are not arbitrable and, moreover, that this Court does not have jurisdiction.[5] The questions raised will be discussed in inverse order.

Each of the plaintiffs is an unincorporated labor organization representing employees in an industry affecting commerce. So far as the record discloses, neither of the labor unions maintains a principal office in this district and none of their duly authorized officers or agents are engaged in representing or acting for employee members in this district. It would seem that the only reason why the action by both unions was brought in this district was to have the related matters presented in one court.

The argument of defendant as to jurisdiction is predicated upon interpretation of 29 U.S.C. § 185(c) which reads as follows:

> For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

Cases in which this section has been discussed have treated it as relating to venue and not subject matter jurisdiction. See Dixie Carriers, Inc. v. National Maritime Union of America, 35 F.R.D. 365 (S.D.Tex.1964); Cf. Colonial Hardwood Flooring Co. v. International Union United Furniture Workers of America, 76 F.Supp. 493 (D.Md.1948); International Association of Machinists v. Smiley, 76 F.Supp. 800 (E.D.Pa.1948).

Counsel for defendant conceded that he has found no authority which construed subsection (c) as relating to subject matter jurisdiction. His argument as set forth in the transcript of hearing is predicated solely upon the use of the term "jurisdiction" instead of the term "venue". The argument is not persuasive because it does not seem logical, upon reading the Act, and, considering the purpose thereof, that Congress intended to create an intransient cause of action vesting sole subject matter jurisdiction in particular district courts to the exclusion of others in which a defendant does not challenge venue. Subsection (a) must be read together with subsection (c). Subsection (a) provides that "Suits * * * *may be brought* in any district court of the United States *having jurisdiction of the parties*". (Emphasis supplied.)

This is a transient cause of action in which the Court has subject matter jurisdiction. Venue may be challenged and the question presented is whether venue has been waived. Venue is a privilege which must be seasonally asserted. Failure to assert it constitutes a waiver. Once venue is waived, even by mistake of law, it may not be reasserted. See Davis v. Smith, 253 F.2d 286 (3rd

---

5. Defendant contends that venue is improper and further that the Court does not have subject matter jurisdiction.

Cir. 1958). Rule 12(b) provides that the defense of improper venue must be raised in a responsive pleading or, at the option of the pleader, by motion made before responsive pleading. There may be circumstances where, by reason of fraudulent representations or misleading information furnished by a plaintiff, relaxation of the Rule would be justified. Such circumstances are not present here.

Paragraphs 1 of the First and Second Causes of Action asserted by the initial complaint filed December 12, 1963 allege jurisdiction generally. The Answer of defendant filed February 4, 1964 denies the allegations of jurisdiction making no specific reference to venue. Nor was the defense of improper venue made by motion before filing of Answer. The first pleading of defendant which specifically raises the issue is the Answer to the Second Amendment to the Complaint filed June 30, 1965 wherein defendant asserts by its First and Third Separate Defenses to All Counts:

*FIRST SEPARATE DEFENSE TO ALL COUNTS*

Plaintiffs and each of them have failed in their Complaint and Amendments to establish the jurisdiction of this Court over the persons and subject matter set forth in plaintiffs' Complaint as amended. This Court is without jurisdiction. Defendant pleads lack of jurisdiction of this Court.

*SECOND SEPARATE DEFENSE TO ALL COUNTS*

Plaintiffs and each of them have failed in any count of their Complaint or its Amendments to plead or establish facts which show that the venue of this Court is proper as required by applicable statutes and court rules. Defendant pleads the defense of improper venue.

There was no specific reference to the venue question in the Pretrial Order entered on October 7, 1964, pre-dating plaintiffs' final Amendment to the Complaint. In the Pretrial Order it was directed that counsel confer and prepare a stipulation of material facts which were not in dispute. The stipulation was filed on December 23, 1964. Paragraphs 12 and 26 of the stipulation referring respectively to the First and Second Causes of Action asserted by plaintiffs recite:

12. Defendant: (a) has refused to recognize the purported grievance dated September 10, 1963 (b) has refused to process the said purported grievance, (c) has taken the position that there is no agreed upon arbitration procedure applicable to said purported grievance, and (d) has stated that it is not willing to submit said purported grievance to arbitration.

26. Defendant: (a) has refused to recognize the purported grievance dated September 17, 1963, (b) has refused to process the said purported grievance, (c) has taken the position that there is no agreed upon arbitration procedure applicable to said purported grievance, and (d) has stated that it is not willing to submit said purported grievance to arbitration.

Defendant's trial brief, furnished to the Court on May 12, 1965, refers to the stipulation and submits by argument nothing more than the substantive question of whether defendant should be compelled to submit to arbitration. The question of venue was discussed in supplementary briefs after filing by defendant of the Answer to Second Amendment to Complaint on June 30, 1965.

A challenge to venue cannot be made after the litigation has progressed beyond the initial required pleadings. A party cannot sit back and have the litigation processed up to the point of an imminent trial date and then raise the issue. Nor can a party accomplish delay in having the defense considered by *general* denials of jurisdiction. The defense of improper venue is an affirmative defense and should be specifically pleaded. Such serves the purpose of early and expeditious determination of whether the Court should proceed further with the action.

There is tacit admission in the arguments of defendant that it did not conceive the defense of improper venue until a late stage in the litigation. In defendant's trial brief on the question of jurisdiction, furnished to the Court on August 7, 1965, it is stated:

*Neither the complaint nor any of its amendments contains an allegation that plaintiff unions maintain a principal office in New Jersey, or that officers or agents of plaintiff unions are engaged in representing or acting for employee members within the State of New Jersey.*

■ If this is intended to suggest that defendant was misled by insufficiency of allegations of the Complaint, the argument has no merit. The intimate relationship existing between defendant and plaintiffs and the nature of that relationship dispels any suggestion that defendant was not aware at inception of this litigation of the fact that neither of plaintiffs had a principal office in the State of New Jersey or that there were no officers or agents engaged in acting for employee members in the State of New Jersey. The Court finds that defendant did, or with reasonable diligence would have had, sufficient knowledge of the location of the principal office of each defendant when this suit was commenced and of the places where its employees were being represented by union officers or agents so that it could have interposed a timely defense of improper venue. Its failure to do so constituted a waiver of that defense. It may be added that the Court does not agree with defendant's assertion that plaintiffs have the burden to establish proper venue as would be the case with respect to subject matter jurisdiction. Improper venue is an affirmative defense and the burden of proof rests upon the party asserting it.

■ The next question is whether the grievances filed by the unions are arbitrable. The rule is that parties to a labor agreement are bound to arbitrate grievances if they have agreed to do so. United Steelworkers of America

v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In the absence of an agreement to arbitrate, arbitration cannot be compelled. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

■ The welfare agreements in this case remained in effect after the general collective bargaining agreements expired. Each of the welfare agreements incorporated the arbitration agreements of the collective bargaining agreements by reference. "Where a writing refers to another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." Williston on Contracts, 3rd Ed., Sec. 628, page 901. Defendant argues that since the collective bargaining agreements had expired, the provisions for arbitration incorporated by reference thereto in the welfare agreements had no further effect. This argument as to Local 102 is clearly without merit. There is, however, some question as to the application of the arbitration provisions of the collective bargaining agreement with Local 227. This arises because of what would seem to be the qualifying language "then in effect." Literally construed, this would seem to indicate that it was the intent of the parties under the Local 227 welfare program that, after expiration of the collective bargaining agreement, the arbitration provision in the welfare agreement became ineffective. Considering the fact that it seems to have been the basic intent of the parties that disputes would be arbitrable during the life of the welfare agreement, it seems more logical to conclude that the phrase "then in effect" was intended to refer to the arbitration provisions of the last general agreement in effect between the parties. At least it may be said that such an interpretation is not untenable though it may be rejected by an arbitrator in the exercise of his expertise in interpreting the agreement to determine what was actually intended by the language used. See Communication Work-

ers of America v. Bell Tel. Laboratories, Inc., 349 F.2d 398 (3rd Cir. 1965).

■ The grievance as to eligibility of strikers to receive benefits is predicated upon an alleged anticipatory breach of the employer's duty to provide such benefits. In one sense it may be argued that the grievance was premature. But viewed from a practical standpoint, it is clear that after the benefits were actually denied, as is the case here, the grievance would be arbitrable and the Court finds little reason to deny arbitration merely because the union brought the grievance prior to the employer's termination of benefits.

■ The employer argues that the arbitration clauses do not encompass an arbitrable dispute over an obligation to fund the insurance benefits. But the welfare agreements provide for *the benefits* and whether they are furnished by funding the same or by direct assumption of the obligation to furnish them goes only to the question of remedy which the arbitrator may fashion if it be found that the unions have a remedial grievance arising out of denial of an obligation to maintain the benefits while a strike was in progress. Nothing herein stated is to be construed as an opinion by this Court as to whether or not the grievances in question have merit or what the nature of the remedy should be if the arbitrator finds them to have merit. This Court merely finds that upon the face of the agreements there is evidence from which it may be determined that an arbitrable issue exists and in so finding it resolves all doubt in favor of arbitration. This Court has no jurisdiction to determine whether a claimed grievance has merit. United Steel Workers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

■ It may well be, as above indicated, that the arbitrator, in his interpretation of the agreements, might find that when a general collective bargaining agreement expired there was no further obligation on the part of the defendant during the time of the strike to either fund the benefits or to compensate for such loss of them, if any, which may have been suffered by the beneficiaries. It is the function of the arbitrator to determine what the defendant was required to do under the agreements in question. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The function of this Court is confined strictly to consideration of the question of whether there is likelihood, on the face of the agreements, that the particular disputes in question may have been intended as disputes to be settled by arbitration. The Court resolves this question with a finding of arbitrability.

An appropriate order for entry of judgment consistent herewith will be submitted forthwith.