394 F.2d 362
 UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA, AFL-CIO, LOCAL 102, an Unincorporated Association, and United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO, Local 227, an unincorporated association,
v.
LEE RUBBER & TIRE CORPORATION, a corporation, Appellant.
 No. 16894.
 United States Court of Appeals Third Circuit.
 Argued March 7, 1968.
 Decided May 1, 1968.
 
 M. Kalman Gitomer, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa. (Edwin P. Rome, Richard A. Semeraro, Philadelphia, Pa., Yauch & Fagan, Newark, N. J., on the brief), for appellant.
 Abraham L. Friedman, Rothbard, Harris and Oxfeld, Newark, N. J. (Samuel L. Rothbard, Newark, N. J., on the brief), for appellees.
 Before HASTIE, Chief Judge, and SEITZ and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Two Unions ("plaintiffs") brought an action in the district court under § 301 of the Labor-Management Relations Act[1] to compel the defendant-corporation to submit certain grievances to arbitration. Thereafter, the district court granted plaintiffs a summary judgment compelling defendant to arbitrate. United Rubber, etc. v. Lee Rubber, 269 F.Supp. 708 (D.C.N.J.1967). This appeal followed. We turn to the undisputed facts of record.
 
 
 2
 One of the Unions ("Local 102") was a party to a collective bargaining agreement with defendant covering the Youngstown, Ohio plant. This agreement was the period from May 1, 1961, to June 30, 1963. It contained, inter alia, a general arbitration clause. On September 28, 1961, defendant and Local 102 entered into a separate agreement for the Youngstown plant entitled "Employee Welfare Benefit Programs — Republic Rubber Division" ("Welfare Agreement"). This agreement was effective during the period from July 1, 1961, to June 30, 1966.
 
 
 3
 The other plaintiff-union ("Local 227") was a party to a collective bargaining agreement with defendant covering its Conshohocken, Pennsylvania plant. It was dated June 30, 1961, and expired June 30, 1963. This agreement contained an arbitration provision which, for our purposes, is the same as that executed for the Youngstown plant. Local 227 also entered into a separate agreement with defendant entitled "Agreement for Pension Service Award and Insurance Benefits" ("Welfare Agreement") for the period July 1, 1961, to June 30, 1966.
 
 
 4
 After the collective bargaining agreements expired on June 30, 1963, a strike ensued at both plants. Concomitantly a dispute arose between defendant and plaintiffs as to defendant's obligations under the Welfare Agreements. The plaintiffs were advised by defendant that as of September 30, 1963, it would discontinue payment of premiums to assure continued coverage for life insurance, sickness and accident benefits and supplemental workmen's compensation benefits for which provision was made under certain articles of their Welfare Agreements. Thereafter, Locals 102 and 227 challenged defendant's right to terminate such payments by invoking the arbitration provisions of their Welfare Agreements. This action followed, presumably because defendant did not agree with plaintiffs' right to arbitration.
 
 
 5
 In the district court the defendant challenged the court's jurisdiction as well as the arbitrability of the grievances. The court below held that it had jurisdiction and that there was a likelihood, on the face of the agreements, that the particular disputes may have been intended to be settled by arbitration. Defendant raises the same issues on appeal.
 
 
 6
 Turning first to the jurisdictional argument, the defendant contends that 29 U.S.C. § 185(c), dealing with actions and proceedings by or against labor organizations in the district court, prevented the district court from entertaining this action. That section provides:
 
 
 7
 "For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."
 
 
 8
 Defendant's jurisdictional contention is that this action was not filed in a district where such an action is permitted to be brought under 29 U.S.C. § 185(c), it being agreed that neither factual situation mentioned in the statute was met. Defendant emphasizes the use of the word "jurisdiction" in the statute. But we agree with the district court that, considering the subject matter, Congress was actually referring to venue rather than jurisdiction. See Dixie Carriers, Inc. v. National Maritime Union of Amer., 35 F.R.D. 365 (S.D.Tex.1964). We think the district court had subject matter jurisdiction and agree further with the court below that the venue challenge was not seasonably raised, as required, and therefore could not be deemed to be a defense to this action.
 
 
 9
 We next consider whether the assumed grievances were subject to the arbitration provisions of the Welfare Agreements.
 
 
 10
 It is clear of course that when these particular grievances arose, the Welfare Agreements were still in effect. Local 102 contends that Part V, Section 1, 10.01 of its Welfare Agreement settles the arbitrability issue. It is one of the "Miscellaneous Provisions," and provides:
 
 
 11
 "10.01. The Employer may enter into a contract or contracts with an insurance company or companies to provide the benefits described in these Parts III, IV and V [those in question] and, upon so doing, the Employer shall be relieved of any individual liability to any Employee or any Beneficiary designated by such Employee other than to maintain such contract or contracts in force. In the event any dispute shall arise, as to whether the Employer has provided the insurance benefits hereinabove described, such dispute shall be subject to the grievance procedure of the General Agreement between the parties hereto, including arbitration."
 
 
 12
 The Welfare Agreement defines "General Agreement" as follows:
 
 
 13
 "The `General Agreement' means the collective bargaining agreement dated May 1, 1961, between the Company and the Union as may be amended or supplemented or any new agreement."
 
 
 14
 The defendant contends that the quoted language of the Welfare Agreement does not incorporate the arbitration procedure set forth in the General Agreement. It contends that arbitration is intended only when the question is whether or not the Company has provided the agreed benefits through an insurance company thereby protecting itself against individual liability. Plaintiff says that defendant agreed to provide certain insurance benefits and now is seeking to avoid its obligation. Thus the issue ultimately to be resolved is whether defendant was required to continue to make any or all of the particular benefits available during the strike. We think it may fairly be inferred from the language of the arbitration provision that the parties intended this matter to be covered by such provision.
 
 
 15
 Nor can we see any merit to defendant's contention that, in any event, the district court committed error in holding that, by reference, the parties incorporated the arbitration clause of the collective bargaining agreement into the Welfare Agreement. The Company says that, at most, it merely incorporated the arbitration machinery to resolve particular questions. From this premise it says that there was no intention to incorporate the broad scope of the grievance and arbitration clauses of the General Agreement. We think the limitation which defendant suggests is not fairly found in the language employed in the agreements.
 
 
 16
 Defendant next argues that the parties specifically excluded from arbitration the issues which the union seeks to arbitrate. Defendant bases its position on a series of contentions which ignore the broad language of the arbitration reference in the Welfare Agreement. In such a case any doubt must be resolved in favor of arbitration. See United Steel Workers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
 
 
 17
 Finally, defendant contends that the agreement to arbitrate was conditioned on a requirement that a collective bargaining agreement be in existence.
 
 
 18
 Clearly the collective bargaining agreement (General Agreement) had expired before these grievances arose. As to Local 102 we think it clear that reference to the General Agreement was made for the purpose of incorporating its arbitration procedure. The right to arbitrate was given by the Welfare Agreement itself. Moreover, although both agreements were executed about the same time, the Welfare Agreement was for a much longer period. We think it would attribute a "strange" intention to the parties to say that in such a case the right to demand arbitration with respect to the Welfare Agreement during its term was dependent upon the existence of an operative bargaining agreement.
 
 
 19
 We think the conclusions reached with respect to defendant's Welfare Agreement with Local 102 are equally applicable to the Local 227 Welfare Agreement. We do note that the latter agreement does provide as follows:
 
 
 20
 "In the event any dispute shall arise based on the question whether the Company has provided the insurance benefits hereinabove described, such dispute shall be subject to the grievance procedure of the Working Agreement then in effect, including arbitration; omitting, however, all steps preceding presentation of the grievance to the Personnel Department of the Company."
 
 
 21
 The defendant points to the words "then in effect" and argues that the language evidences an intent to have the arbitration provision applicable only so long as the Working Agreement (collective bargaining agreement) was in effect. Again, we note that these rights are established by the Welfare Agreement and the reference to the Working Agreement was only for purpose of incorporating the general arbitration procedure. The continuing vitality of the entire collective bargaining agreement was not of consequence in this context.
 
 
 22
 The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 29 U.S.C. § 185 and 28 U.S.C. §§ 1331 and 1337