In re **AMERICAN FREIGHT SYSTEM, INC., U.S.A. Western, Inc., Smith's Transfer Corp., Sioux Falls Service Center, Inc., Debtors.**

**American Freight System, Inc., Plaintiff,**

v.

**Blymyer Engineers, Inc., Defendant.**

**Bankruptcy Nos. 88–41050–11, 88–41051–11, 88–41170–11, 88–41188–11. Adversary No. 98–7080.**

United States Bankruptcy Court, D. Kansas, Topeka Division.

July 9, 1999.

## ORDER DENYING MOTION TO DISMISS

JAMES A. PUSATERI, Chief Judge.

This proceeding is before the Court on the defendant's motion to dismiss. The defendant appears by counsel Earl L. Hagström, Sedgwick, Detert, Moran & Arnold, San Francisco, California, and Martin W. Bauer and Kathryn Gardner, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, Kansas. The plaintiff appears by counsel Dennis L. Davis and Faith M. Sparr, Morrison & Hecker, L.L.P., Kansas City, Missouri. The Court has reviewed the relevant materials and is now ready to rule.

### FACTS

In 1988, American Freight System, Inc. ("AFS"), U.S.A. Western, Inc. ("U.S.A. Western"), Smith's Transfer Corporation ("Smith's"), and Sioux Falls Service Center, Inc. ("Sioux Falls"), were all subsidiaries of American Carriers, Inc. ("ACI"), involved in the business of carrying freight by truck. AFS and U.S.A. Western filed chapter 11 bankruptcies on August 16, 1988. Smith's, Sioux Falls, and ACI also wound up in chapter 11 cases later that year. The bankruptcies of the four subsidiaries were substantively consolidated and

they proceeded thereafter as a single case, which the Court will refer to simply as the AFS case. AFS liquidated substantial real and personal property during the bankruptcy, realizing more than $100,000,000 in sales proceeds before its joint plan of reorganization with ACI ("AFS–ACI Plan") was confirmed on June 10, 1991.

This litigation concerns a piece of real property in Cincinnati, Ohio, that AFS sold. Like many of AFS's properties, this one had underground fuel storage tanks in place. On March 10, 1989, the Court entered an order approving AFS's sale of the property to S & E Investments ("S & E") for more than $440,000. Because environmental contamination commonly occurs on property with underground storage tanks, the sale agreement included provisions for remediating any contamination that might exist. S & E was to pay the first $10,000 of the cost of remediation and AFS was to pay the rest. If the remediation would cost more than AFS was to receive from the sale, the parties could terminate the agreement and AFS would refund any deposit to S & E. The order approving the sale authorized AFS to hire a suitable company to perform the necessary environmental remediation without seeking further Court approval. S & E hired a company that determined that contamination might exist on the property. AFS then hired the defendant, Blymyer Engineers, Inc. ("Blymyer"), to provide environmental project management services, which apparently would include having the storage tanks removed, determining whether environmental contamination had occurred, devising a plan to remediate any contamination, and carrying out the remediation plan. Under a contract prepared by Blymyer and dated October 31, 1989, Blymyer was to arrange for the removal of nine underground storage tanks and related equipment, with the work scheduled to begin immediately and be completed by December 15, 1989. Blymyer determined that the tanks had leaked and con-

taminated soil on the former AFS property and an adjoining property owned by Steinberg's, Inc. ("Steinberg's"). Under a second contract prepared by Blymyer and dated February 11, 1991, Blymyer was to arrange for the removal, disposal, and replacement of about 3,000 cubic yards of contaminated soil, with work to begin immediately but no scheduled completion date stated. Both contracts included the following provision:

> 11. [AFS] agrees that in the event [AFS] institutes litigation to enforce or interpret the provisions of this agreement, such litigation is to be brought and adjudicated in the appropriate court in the county in which [Blymyer's] principal place of business is located, and [AFS] waives the right to bring, try or remove such litigation to any other county or judicial district.

The total cost of these contracts to AFS appears to have been about $189,000. In its original complaint, AFS had referred to an attached report dated April 24, 1991, that Blymyer apparently prepared; the report seems to indicate that Blymyer then thought the soil removal work called for by the second contract was complete. In its original answer, Blymyer seems to have conceded that it had prepared the report, but denied some aspects of AFS's interpretation of the report. The amended complaint, however, did not mention or attach the report.

Under the AFS–ACI Plan, AFS was appointed as a liquidating agent that would be assigned most of the assets and all the liabilities of the various debtors, and a new company was created that would receive the rest of the assets but none of the prepetition liabilities. As explained in the disclosure statement for the AFS–ACI Plan, the Plan recognized that during the bankruptcy case, AFS had been selling real property that either was or might have been contaminated through leakage from underground storage tanks, and that AFS had and would continue to have an

obligation to remediate these environmental problems. The Plan also recognized that litigation had arisen and could continue to arise from these sales and the remediation obligation. AFS was to liquidate the assets it received, be responsible for any environmental remediation that became necessary on any of the property that had been or would be sold, and to defend or pursue certain existing litigation and any future litigation that might arise from the asset liquidation process. The Plan provided that the Bankruptcy Court would retain jurisdiction to preside over, among other things, litigation arising from the sales and remediation obligations.

At some time not revealed in the record before the Court, AFS paid Blymyer for its remediation services on the property sold to S & E. Sometime later, Steinberg's notified AFS that the remediation had not been successful and that contaminants were still flowing onto its property. Steinberg's sued AFS in this Court on March 6, 1997, in Adversary No. 97–7018. As a result of this suit, AFS incurred additional costs to remediate Steinberg's property.

On July 8, 1998, AFS sued Blymyer, claiming in several counts that Blymyer had not performed the initial remediation properly and so was liable to AFS for damages based on negligence, gross negligence, negligent misrepresentation, fraud, breach of contract, and breach of implied warranty. Blymyer obtained an extension of time and finally filed its answer on September 1. In the answer, Blymyer admitted: (1) the Court had jurisdiction over AFS's complaint under 28 U.S.C.A. §§ 157 and 1334; (2) the matter constituted a core proceeding as defined in 28 U.S.C.A. § 157(b)(2)(A) and (O); and (3) venue of the case was proper under 28 U.S.C.A. §§ 1408 and 1409. Blymyer also denied liability on AFS's claims, and asserted 23 separately enumerated affirmative defenses and four counterclaims. Sometime later, AFS was given permission to amend its complaint. The amended complaint repeated the original claims for damages and added one for breach of express warranty. Blymyer obtained an agreed extension of time to respond to the amended complaint, and then filed a motion to dismiss, contending for the first time that venue was improper because its contracts with AFS included forum selection clauses requiring suits to be brought at Blymyer's principal place of business, and that the Court did not have jurisdiction of the case because it is a non-core proceeding not related to the AFS bankruptcy case.

### ISSUES

1. Did Blymyer waive the venue choice provided by the forum selection clauses in the contracts by failing to raise that question in its answer to the original complaint, or did AFS's filing of its amended complaint give Blymyer a second chance to raise an improper venue defense?

2. Is this case a core proceeding "arising in" AFS's bankruptcy case, a non-core proceeding "related to" AFS's bankruptcy case, or a non-core proceeding that is not "related to" the bankruptcy case?

### DISCUSSION AND CONCLUSIONS

*1. Venue and Forum Selection*

■■■ Blymyer contends the Court should dismiss this proceeding under Federal Rule of Civil Procedure 12 for improper venue (subsection (b)(3)) or for failure to state a claim (subsection (b)(6)) based on the forum selection clauses in the contracts with AFS. Federal Rule of Bankruptcy Procedure 7012(b) provides that subsections (b) to (h) of Civil Rule 12 apply to adversary proceedings. The Court does not understand how the forum selection clauses in the contracts could be construed to prevent AFS's amended complaint from stating a claim for relief, but believes the clauses instead can make venue improper in a court other than one specified in the forum selection clause. *See Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir.1992) (motion to dismiss based on forum selection clause is

frequently analyzed as motion to dismiss for improper venue). Civil Rule 12(h)(1) provides that a defense of improper venue is waived if not raised by motion or included in a responsive pleading or an amendment to a responsive pleading made within the limited time during which Civil Rule 15(a) allows such an amendment to be made as a matter of course. Under this provision, Blymyer clearly waived its right to assert the forum selection clause when it failed to raise the venue issue in its answer to AFS's original complaint.

■ The question posed by Blymyer's belated assertion of the forum selection clause is whether Blymyer gets a second chance to raise the venue defense simply because AFS amended its complaint. Blymyer cites a number of cases to support its position, but they merely hold that a properly amended complaint supersedes the original one and precludes reliance on allegations contained in the original that are not repeated or incorporated into the amended one. *See, e.g., Kelley v. Crosfield Catalysts,* 135 F.3d 1202, 1204–05 (7th Cir. 1998) (in deciding to dismiss amended complaint, court could not rely on factual allegations made in original complaint but not repeated or incorporated into amended one); *Hibernia Nat'l Bank v. Carner,* 997 F.2d 94, 101–02 (5th Cir.1993) (defendant could not defeat summary judgment motion by relying on allegation made in original complaint but changed in amended complaint); *cf. Murray v. Archambo,* 132 F.3d 609, 612 (10th Cir.1998) (original complaint not superseded because amended complaint not properly filed). These decisions are not relevant in this case. The question here is not the effect of AFS's original complaint after the amendment but of Blymyer's original answer. On this question, the Court agrees with a number of cases that have concluded the defendant's waiver of a venue defense in its original answer remains in effect after the plaintiff amends its complaint. *United Rubber, Cork, Linoleum, and Plastic Workers Local 102 v. Lee Rubber & Tire*

*Corp.,* 269 F.Supp. 708, 713–14 (D.N.J. 1967), *aff'd* 394 F.2d 362 (3d Cir.), *cert. denied* 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968); *Pratt v. Rowland,* 769 F.Supp. 1128, 1131–32 (N.D.Cal.1991); *Lanehart v. Devine,* 102 F.R.D. 592, 593–95 (D.Md.1984); *see also Thompson v. United States,* 312 F.2d 516, 519–20 (10th Cir.1962), *cert. denied* 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963) (improper venue is personal defense that was waived by filing an answer, a counterclaim, and a motion for summary judgment without asserting a venue defense); *Glater v. Eli Lilly & Co.,* 712 F.2d 735, 738–39 (1st Cir.1983) (defendant wishing to raise any of four defenses in Civil Rule 12(h)(1) "must do so in first defensive move, be it a Rule 12 motion or a responsive pleading" or within time limits of Rule 15(a), so long as defense is then available); *Gilmore v. Shearson/American Express, Inc.,* 811 F.2d 108, 112 (2d Cir.1987) (like defenses of lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service, explicit waiver of motion to compel arbitration was not set aside just because plaintiff later amended complaint). These cases are directly on point, and neither Blymyer nor a leading treatise on federal civil procedure cite any reaching the opposite conclusion under circumstances similar to those presented here. *See* 15 Wright, Miller & Cooper, *Fed.Prac. & Pro.: Jurisdiction* § 3829 (2d ed. 1986 & 1999 Pocket Part).

In a footnote to one of its briefs, Blymyer apparently asserts that AFS included the portions of the parties' contracts that contained the forum selection clauses for the first time in the copies that it attached to its amended complaint. It seems Blymyer wishes to suggest that it was not previously aware of the clauses. The clauses were, however, included in the copies of the contracts attached to AFS's original complaint as filed with the Court; perhaps Blymyer means only the front page of the two-page contracts were attached to the copy served on it. Under other circumstances, this might be a possi-

bility requiring further inquiry. However, as a party to the contracts, Blymyer should have had its own copies of the contracts, and furthermore, as the party that produced the contracts by completing what appears to be a standard form it used for that purpose, Blymyer certainly should have known its boilerplate forum selection clause was included in the contracts. At the least, Blymyer should have know that the improper venue defense was available to it when it was served with AFS's original complaint.

For these reasons, the Court concludes that AFS's amendment of its complaint did not permit Blymyer to raise the venue defense it had already waived by failing to raise it in response to the original complaint.

*2. Core Arising-in, Non-core, Related-to Jurisdiction, or No Jurisdiction*

■ Bankruptcy jurisdiction is conferred on federal district courts by 28 U.S.C.A. § 1334, which provides in pertinent part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The district courts may, as has been done in the District of Kansas, refer bankruptcy jurisdiction to the bankruptcy judges for the district. 28 U.S.C.A. § 157(a). Building on the general jurisdictional grant in § 1334, § 157 also provides in pertinent part:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning administration of the estate; . . . and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

. . . .

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

Although in its original answer Blymyer agreed with AFS that the Court had jurisdiction of this proceeding under §§ 157 and 1334 and that the proceeding was a core matter under § 157(b)(2)(A) and (O), Blymyer now argues that the Court does not have jurisdiction and that the proceeding is a non-core matter because AFS's claims are post-confirmation state law claims. In *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held that prepetition con-

tract actions based on state law could not be assigned for final resolution to a non-Article III federal court. After *Marathon,* Congress enacted §§ 1334 and 157, assigning bankruptcy jurisdiction to federal district courts but allowing them to refer that jurisdiction to bankruptcy courts nearly to the extent the Constitution would allow, and adopting the "core" concept to specify matters that could be assigned to bankruptcy courts for final resolution without the parties' consent.

In *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1517–18 (10th Cir.1990), a case Blymyer relies on, the Tenth Circuit said:

> Bankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress. *Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir. 1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Bankruptcy courts have jurisdiction over core proceedings. *See* 28 U.S.C. § 157. Core proceedings are proceedings which have no existence outside of bankruptcy. *In re Alexander,* 49 B.R. 733, 736 (Bankr.D.N.D.1985). Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings. *In re Wood,* 825 F.2d 90, 96 (5th Cir.1987). Although determination of whether the marital property is part of the bankruptcy estate is a core proceeding, the later determination of the ownership of the marital property as between third parties, such as Mrs. Gardner and the government, is not a core proceeding. *See In re Holland Indus., Inc.,* 103 B.R. 461, 466 (Bankr. S.D.N.Y.1989) (bankruptcy courts determine validity of tax liens under rubric of core proceedings only when lien concerns debtor's property); *cf. In re Jackson,* 102 B.R. 82 (Bankr.N.D.Tex.1988) (court had jurisdiction to determine validity, extent or priority of liens on homestead property pursuant to 28 U.S.C. § 157(b)(2)(K) and (O) as a core

proceeding and as a related proceeding even though property was no longer property of bankruptcy estate; jurisdiction retained only to determine what debts are discharged and unsecured indebtedness of debtor's estate). Accordingly, this action is not a core bankruptcy proceeding.

In *Gardner,* the bankruptcy court had determined that, after a state divorce court awarded it to the non-debtor spouse, marital property was no longer property of the bankruptcy estate and that the state court order extinguished any interest the government claimed in the debtor's interest in the marital property as a result of its tax lien against the debtor. *Id.* at 1517. The Circuit ruled that the bankruptcy court had no jurisdiction over the third-party dispute between the non-debtor spouse and the IRS once it determined the debtor had no interest in the property. *Id.* at 1517–19. Blymyer suggests the Court does not have jurisdiction over AFS's suit because, like the marital property in *Gardner,* the contaminated real property that was sold is no longer property of the estate. AFS's claims, though, are based on its contracts with Blymyer, which became property of the estate when they were formed, and remained in it after the real property left the estate.

A number of circuit courts have declared that disputes arising from contracts entered into by a bankruptcy trustee or a debtor-in-possession, or claims against a bankruptcy trustee for his or her administration of the bankruptcy case are "core proceedings" under § 157(b)(2). *See Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165 (1st Cir.1987) (sale contract); *Maitland v. Mitchell (In re Harris Pine Mills),* 44 F.3d 1431 (9th Cir.1995) (sale of business); *Sanders Confectionery Prods. Inc. v. Heller Financial, Inc.,* 973 F.2d 474 (6th Cir. 1992), *cert. denied* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993) (claims against bankruptcy trustee); *Ben Cooper, Inc. v. Insurance Co. of the State of Penn-*

*sylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir.), *vacated and remanded for consideration of appellate jurisdiction*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *opinion reinstated on reconsideration*, 924 F.2d 36 (2d Cir.), *cert. denied* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991) (claims against insurer and brokers about insurance policy purchased postpetition). These cases do not discuss the basis of jurisdiction under § 1334, but decide only the question whether the proceedings are "core" under § 157(b)(2). Nevertheless, their reasoning makes clear that the proceedings are core at least in part because they would not exist outside of bankruptcy, and thus satisfy one of the tests identified in *Gardner* for "arising in" jurisdiction. Although similar disputes might have arisen without the bankruptcy case, contracts with or claims by or against either a trustee or debtor-in-possession would not exist outside of bankruptcy because the trustee or debtor-in-possession does not exist outside of bankruptcy. A brief discussion of each case will demonstrate this point.

In *Arnold Print Works*, the First Circuit held that a suit by the debtor-in-possession to recover on a sale contract it entered into as part of its efforts to liquidate bankruptcy estate assets was a "core" proceeding within the bankruptcy court's jurisdiction under 28 U.S.C.A. § 157(b)(2)(A) and (O), even though the claims the debtor-in-possession was asserting raised issues of state law. 815 F.2d at 168–69. The Circuit also held that the suit was distinguishable from the prepetition contract action that the Supreme Court had held in *Northern Pipeline v. Marathon* could not constitutionally be placed within the jurisdiction of a non-Article III court because: (1) the postpetition contract was a type that had traditionally been treated as being a contract with the court that was overseeing the debtor-in-possession; (2) a party dealing with a debtor-in-possession should not be surprised that disputes arising from those dealings could be resolved by the bank-

ruptcy court; and (3) the practical need for orderly estate management, administration, and distribution can reasonably be thought to be sufficiently greater in this situation to make bankruptcy court adjudication permissible. *Id.* at 169–71.

In *Harris Pine Mills*, the Ninth Circuit ruled that a suit brought by parties that had bought a furniture business from a chapter 11 operating trustee and its agents for fraud, negligence, negligent misrepresentation, and violation of Oregon's version of the Racketeer Influenced and Corrupt Organizations (RICO) Act in connection with the sale was a "core" proceeding subject to federal jurisdiction. 44 F.3d at 1434–38. The Circuit relied on *Sanders Confectionery Products* (discussed below) and *Arnold Print Works*, among other cases.

In *Sanders Confectionery Products*, the Sixth Circuit declared in a footnote that claims against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not exist independently of the bankruptcy case and suits pressing them were therefore core proceedings. 973 F.2d at 483 n. 4. The Circuit said:

> The claims against the trustee Alix, however, would be core proceedings. While the specific causes of action, such as RICO, exist independently of bankruptcy cases, an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not. All claims against Alix related to his conduct during the FSI bankruptcy, and should be considered core proceedings.

973 F.2d at 483 n. 4.

In *Ben Cooper*, the Second Circuit ruled that claims asserted by a reorganized debtor based on an insurance policy it bought postpetition but pre-confirmation against the insurance company and two brokers that had helped it obtain the policy were "core" proceedings under 28 U.S.C.A. § 157(b)(2)(A). 896 F.2d at 1397–1400. The Circuit relied on the rea-

soning of *Arnold Print Works,* finding it especially persuasive in the case before it because: (1) the insured property was property of the estate; (2) the reorganization plan promised adequate insurance for the estate assets; (3) the bankruptcy court's confirmation of the plan was premised on adequate insurance; and (4) the insurance company and brokers were aware that they were dealing with a debtor-in-possession and that the property being insured was an asset of the bankruptcy estate. *Id.* at 1399. The Circuit declared:

> We hold, therefore, that the bankruptcy court has core jurisdiction, pursuant to § 157(b)(2)(A), over contract claims under state law when the contract was entered into post-petition. The adjudication of such claims is an essential part of administering the estate. We read *Marathon* to apply to claims arising *prepetition,* and decline to apply that ruling to claims involving contracts entered into post-petition. Similarly, we distinguish those lower court cases cited by appellees that, relying on *Marathon,* hold pre-petition claims to be non-core. [Citations omitted.]

*Id.* at 1400 (emphasis in original).

■ Another circuit court decision makes clear that even disputes that arise only after confirmation of a plan of reorganization can come within "arising in" and "related to" bankruptcy jurisdiction. *See Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.),* 86 F.3d 364 (4th Cir.1996). In this case, the Fourth Circuit ruled that the district court had both "arising in" and "related to" jurisdiction to enter an order that limited the fees attorneys could collect from their clients' share of additional payments that were going to be made from the trust established under *A.H. Robins's* confirmed plan to compensate women injured by the Dalkon Shield, because the trustees had determined that the trust would have sufficient funds to pay additional amounts to claimants with whom it had previously settled. 86 F.3d at 371–73. The Circuit said:

The present proceeding or controversy arises in Title 11, and the district court had jurisdiction because it "would have no practical existence but for the bankruptcy." The A.H. Robins Title 11 bankruptcy produced the Trust and the [Claims Resolution Facility], which established the expedited procedures required to process and pay almost 200,-000 claims from all over the world. This unusual bankruptcy resulted from worldwide use of a product by hundreds of thousands of women and made it possible for the attorneys to advertise for clients in publications of general interest to women. The three options for handling cases and the use of claimants' profiles and "best and final offers" that were nonnegotiable allowed the CRF to handle thousands of claims promptly and also made it possible for appellant-attorneys to represent a multitude of claimants without expending the time, effort and resources that would have been required to try individual cases or to negotiate individual settlements in the usual "offer and counter offer" way.

Without the bankruptcy, there would have been no pro rata distribution. This is unique to this bankruptcy proceeding. The district court's order limiting the percent that the plaintiffs' [sic] may receive in fees out of these pro rata distributions could not have occurred but for the bankruptcy and, therefore, said order "arises in" the bankruptcy, and the court has jurisdiction under § 1334(b).

86 F.3d at 372.

These decisions convince the Court that it has "arising in" jurisdiction of AFS's claims against Blymyer because the contracts with Blymyer were entered into postpetition but pre-confirmation, and were part of AFS's efforts to liquidate property of the estate. The confirmed AFS–ACI Plan clearly provided for the Court to retain jurisdiction over disputes that existed or might arise in the future because of known or undiscovered environmental contamination of the real property

that AFS liquidated postpetition. AFS's claims against Blymyer arose in the liquidation process that was conducted during the bankruptcy cases and that the Plan authorized AFS to complete following confirmation. Although the real property itself left the bankruptcy estate when the sale was completed, potential claims arising from the sale and attendant remediation process both against AFS and by AFS against others remained in the estate.

The Court might very well reach a different conclusion if this case involved an ongoing postpetition, pre-confirmation contract that a reorganized debtor had assumed under its plan in order to carry on its post-confirmation business. But it does not. This case merely involves a contract entered into as part of a liquidation process that is continuing post-confirmation, not as part of a reorganized business that is continuing post-confirmation. In the sense required for the Court to have jurisdiction, AFS's claims against Blymyer "arose in" the AFS bankruptcy.

Blymyer also complains that the AFS–ACI Plan cannot confer jurisdiction on this Court beyond that which Congress has assigned, and that the Plan did that if AFS's claims are within the jurisdiction the Plan attempted to retain for the Court because the claims arose post-confirmation. However, because the contracts were formed postpetition but before confirmation, any claims that arose from the performance or breach of those contracts before confirmation would clearly have been matters "arising in" the bankruptcy cases within the meaning of 28 U.S.C.A. §§ 1334(b) and 157(b)(2)(A), and the Plan could properly provide for the Court to retain jurisdiction of such matters after confirmation occurred. In fact, since the first contract required Blymyer to complete work during 1989, AFS's claims for improper performance of that work probably would have arisen during 1989, although they apparently were not known at that time. The work under the second contract was to begin and apparently was

largely, if not completely, finished before confirmation occurred, so the claims against Blymyer under that contract probably also arose before confirmation. This dispute simply is not a post-confirmation one between the reorganized debtor and a third party, unrelated to pre-confirmation activities, over which this Court would have no jurisdiction, *see Claybrook Drilling Co. v. Divanco, Inc.,* 336 F.2d 697, 701 (10th Cir.1964) (in a case under the old Bankruptcy Act, declaring in dicta that court may not keep reorganized "corporation in 'perpetual tutelage' ... by assuming jurisdiction over controversies between the reorganized corporation and third parties"; *the contracts at issue were formed post-confirmation, id.* at 698–99), but one between the liquidating agent appointed under the AFS–ACI Plan to finish liquidation activities begun pre-confirmation and a third party that contracted with the debtor-in-possession to perform work necessary to those activities.

Even if this dispute were not one "arising in" but only "related to" the bankruptcies of AFS and the related companies, the Court notes it is possible that Blymyer effectively consented to this Court's jurisdiction to render a final judgment in this matter by filing its original answer, in which: (1) it agreed with AFS's assertion that the matter was "core"; (2) failed to indicate that it would not consent to this Court's jurisdiction to resolve the dispute if it were non-core; and (3) asserted counterclaims affirmatively asking the Court to grant relief against AFS. *See* 28 U.S.C.A. § 157(c)(2); Fed.R.Bankr.P. 7012(b); *Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 403–04 (4th Cir.1992) (parties' consent to bankruptcy court's jurisdiction can be inferred from their failure to timely object); *Abramowitz v. Palmer,* 999 F.2d 1274, 1279–80 (8th Cir.1993) (failure to timely object to bankruptcy court's dispositive judgment of non-core proceeding constitutes implied consent); *Horwitz v. Alloy Automotive Co.,* 992 F.2d 100, 103 (7th Cir.1993) (silence is not consent, but

affirmatively invoking bankruptcy court's jurisdiction most assuredly supplies whatever consent is necessary). However, the Tenth Circuit has not issued a decision addressing this question, and the Court need not decide it in this case since the proceeding is one arising in the bankruptcy case.

Because the Court is convinced that AFS's claims against Blymyer are claims "arising in" the AFS bankruptcy and are "core" proceedings under § 157(b)(2)(A), Blymyer's motion to dismiss is hereby denied.

IT IS SO ORDERED.