In re BEN COOPER, INC., Light Manufacturing Co., Inc., Aimwell Products, Inc., Ben Cooper Sales Corp., Debtors.

BEN COOPER, INC., Appellant,

v.

The INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, Kalvin–Miller International, Inc., and Kerwick & Curran, Inc., Appellees.

No. 486, Docket 89–5026.

United States Court of Appeals, Second Circuit.

Argued Dec. 21, 1989.

Decided Feb. 7, 1990.

Charles S. Biener, New York City (Lawrence L. Ginsburg, and Lowenthal, Landau, Fischer & Ziegler, P.C., New York City, N.Y., on the brief), for appellant, Ben Cooper, Inc.

Constantino P. Suriano, New York City (Stuart Cotton, Karen M. Cooke, and

Mound, Cotton & Wollan, New York City, on the brief), for appellee, Ins. Co. of State of Pa.

Victoria A. Stewart, New York City (Jackson & Nash, New York City, on the brief), for appellee, Kalvin–Miller Intern., Inc.

Geoffrey W. Heineman, New York City (Ohrenstein & Brown, New York City, on the brief), for appellee, Kerwick & Curran, Inc.

Before TIMBERS, CARDAMONE and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Ben Cooper, Inc. ("Cooper") appeals from an oral decision from the bench on July 11, 1989, in the Southern District of New York, Louis L. Stanton, District Judge. The district court reversed an order of the bankruptcy court, Cornelius Blackshear, Bankruptcy Judge, filed on June 15, 1989. The bankruptcy court held that the adversary proceeding filed by Cooper against appellees Insurance Company of the State of Pennsylvania ("ICSP"), Kalvin–Miller International, Inc. ("KM") and Kerwick & Curran, Inc. ("K & C") was "core" within the meaning of 28 U.S.C. § 157(b)(2) (1988). It retained jurisdiction. The district court disagreed, holding that the adversary proceeding was merely "related" to Cooper's underlying Chapter 11 petition, and withdrew the reference to the bankruptcy court. The district court also held that withdrawal was required because appellees were entitled to a jury trial on at least some of their affirmative defenses and on some of Cooper's claims. The district court then abstained from addressing the merits of Cooper's claims in favor of ongoing proceedings based on the same operative facts, commenced by ICSP in New York Supreme Court, New York County. Cooper timely appealed to this Court.

On appeal, Cooper asserts that the proceeding is core and that appellees are not entitled to a jury trial. Appellees, in turn, assert that the proceeding is non-core and that their jury demand should be honored. For the reasons stated below, we hold that the proceeding is core, and therefore we reverse the district court. We also hold that appellees are entitled to a jury trial, and that such trial should be in the bankruptcy court. We therefore remand the case to the bankruptcy court.

We reach our determination of the issue of core jurisdiction in light of In re Manville Forest Products Corp., 896 F.2d 1384 (2 Cir.1990), also decided today, and assume familiarity with that opinion.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Cooper is a toy and costume manufacturer and importer. Facing economic difficulties, it filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in April 1988. Pursuant to that petition, Cooper submitted a reorganization plan under which, among other things, it covenanted to "keep all of its respective properties adequately insured at all times with responsible insurance carriers against loss or damage by fire and other hazards."

Acting to fulfill its responsibility under the plan (which was finally confirmed by the bankruptcy court on April 4, 1989), Cooper retained KM, an insurance broker, to obtain coverage for its various facilities. KM enlisted K & C, another broker, to assist in finding coverage for Cooper. In October 1988 the brokers procured from ICSP a standard commercial property insurance policy for one of Cooper's facilities, located in Georgia. Appellees do not dispute that they were aware of Cooper's Chapter 11 status.

On January 6, 1989, the Georgia facility was hit by fire, resulting in damage that, Cooper claimed, totaled over $2 million. After an extended investigation, ICSP determined that it was not liable for the loss because of alleged misrepresentations and

omissions by Cooper in the policy application; specifically, that Cooper failed to disclose in its application that the facility was used for manufacturing rather than as a warehouse. Moreover, ICSP determined that Cooper exaggerated its loss in the fire when it submitted its claim. That dispute underlies the instant appeal but is not before us directly. We express no view as to its proper disposition.

On April 18, 1989, ICSP formally cancelled its policy with Cooper. That same day, ICSP commenced an action in the New York Supreme Court, New York County. Its complaint alleged three causes of action: (1) that the policy was void *ab initio* due to the misrepresentations in Cooper's application; (2) that it was not liable for the fire loss because of those misrepresentations; and (3) that it was not liable under the policy because of Cooper's exaggerated claim of loss. Cooper sought and, on May 9, received from the bankruptcy court a stay of the state court action and a preliminary injunction requiring ICSP to maintain the policy.

Almost simultaneously, Cooper commenced, in the bankruptcy court, the adversary proceeding that is the subject of the instant appeal. Cooper's complaint contained three counts. The first, against ICSP, requested a declaration that the policy remained in effect, a declaration that ICSP was liable for all losses sustained in the fire, and punitive damages from ICSP of $5 million. The second count, against KM, alleged negligent conduct in obtaining the policy, and requested, if ICSP were found not liable under the policy, that KM be held responsible for the fire and consequential losses. The third count, against K & C, essentially mirrored the second. ICSP's answer set forth five affirmative defenses. Three of them repeated, almost to the word, the three causes of action in ICSP's state court complaint.

Appellees opposed the bankruptcy court's jurisdiction over the adversary proceeding, and moved the district court for withdrawal of the reference. They also moved to have the state court stay and the preliminary injunction lifted. Rather than rule on the merits of the motion, the district court, Hon. John M. Walker, remanded the case to the bankruptcy court on May 31 for a determination of the question whether the claims in the proceeding were core.

On June 15 the bankruptcy court entered an order holding that the proceeding was core, and retained jurisdiction. It relied primarily on § 157(b)(2)(A) (estate administration) and secondarily on § 157(b)(2)(L) (confirmation of plans).

Appellees then moved in the district court to reverse that order. The court did so in an oral ruling dated July 11, holding that, while the statutory provisions were relevant to the adversary proceeding, the statutory provisions were not sufficiently broad to render the proceeding core. Moreover, the court held that appellees were entitled to a jury trial on at least some of the issues raised. The court also granted the ancillary relief appellees sought: withdrawal of the reference to the bankruptcy court, abstaining from exercising its own jurisdiction, and lifting the stay of the state court proceedings. This appeal followed.

On appeal, the parties agree that the primary issues are (1) whether the adversary proceeding is core, and (2) whether appellees are entitled to a jury trial, as they have demanded. Cooper does not raise the other issues on which the district court ruled—the decisions to lift the state court stay and to abstain from exercising jurisdiction.

## II.

We turn first to the question whether the adversary proceeding is core within the meaning of 28 U.S.C. § 157(b)(2) (1988). As a question of law, we review de novo the district court's determination that the proceeding is non-core. *Brunner v. New York State Higher Ed. Servs.*, 831 F.2d 395, 396 (2 Cir.1987).

### (A)

The jurisdiction of the bankruptcy court over core proceedings is set forth in 28 U.S.C. § 157(b)(1) (1988), which provides

that "[b]ankruptcy judges may hear and determine ... all core proceedings arising under title 11 ... and may enter appropriate orders and judgments." By contrast, any determinations by the bankruptcy court in a non-core proceeding, upon timely objection, are subject to de novo review by the district court. 28 U.S.C. § 157(c)(1) (1988).

■ In § 157(b)(2), Congress provided a non-exclusive list of proceedings which it deemed core. Like the bankruptcy court, our analysis will focus on § 157(b)(2)(A) ("matters concerning the administration of the estate"). The language of that sub-section could be construed to include almost any matter relating to bankruptcy, but the structure of the statute as a whole does not permit such a construction. Matters that merely concern the administration of the bankrupt estate tangentially are related, non-core proceedings. *In re Wood,* 825 F.2d 90, 96 (5 Cir.1987) (Wisdom, J.).

Our attempt to make the general language of § 157(b)(2)(A) more concrete begins with the Supreme Court's plurality opinion in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982). At issue in *Marathon* was the provision of the Bankruptcy Act of 1978 which gave the bankruptcy court "jurisdiction over all 'civil proceedings arising under ... or arising in or *related to* cases under title 11.'" *Id.* at 54 (emphasis in original) (quoting 28 U.S.C. § 1471(b) (Supp. IV 1980)). In order to exercise that jurisdiction, the statute vested bankruptcy courts with "all of the 'powers of a court of equity, law, and admiralty,'" with only very limited exceptions. *Id.* at 55 (quoting 28 U.S.C. § 1481 (Supp. IV 1980)). Despite that broad jurisdictional grant, however, the Act did not give bankruptcy judges Article III status.

In *Marathon,* the underlying cause of action, as here, was breach of contract. The cause of action arose before Northern Pipeline, the debtor, petitioned the bankruptcy court for Chapter 11 reorganization. The debtor, however, did not initiate the action until after the Chapter 11 petition was filed. Under the 1978 Act, therefore, the bankruptcy court had full jurisdiction over the dispute.

The Supreme Court held that while Congress, pursuant to its power under the Bankruptcy Clause of the Constitution, U.S. Const., art. I, § 8, cl. 4, could grant the bankruptcy courts the right to issue final orders in proceedings that were at the core of bankruptcy jurisdiction, primarily the restructuring of the debtor-creditor relationship, it could not give the right to issue such orders in "private right" claims (e.g., tort and contract), merely because those claims involved a debtor. *Marathon, supra,* 458 U.S. at 71. Those traditional common law claims, the Court held, were reserved for Article III courts.

■ The congressional response to *Marathon* is set forth in § 157. We employ the "traditional tools of statutory construction," *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446 (1987), to interpret that response. Neither the House nor the Senate issued a report regarding the Bankruptcy Amendments and Federal Judgeship Act of 1984, of which § 157 is a part. The statements of several influential legislators, however, indicate that bankruptcy jurisdiction was to be construed as broadly as possible within the constitutional constraints of *Marathon.* We agree with the First Circuit's analysis of the legislative history. As that court stated,

"the legislative history of [§ 157] indicates that Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings. *See* 130 Cong.Rec. E1108–1110 (daily ed. March 20, 1984) (statement of Representative Kastenmeier); *id.* at H1848, H1850 (daily ed. March 21, 1984) (statement of Representative Kindness). They used arguments strongly suggesting that they were pressing the notion to its constitutional bounds. They referred to the suits in the non-core category as 'Marathon-type' cases, *see, e.g., id.* at E1108, E1109 (daily ed. March 20, 1984) (prepared statement

of Representative Kastenmeier); *id.* at H1848 (daily ed. March 21, 1984) (statement of Representative Kindness), which they understood to be proceedings of 'a very limited kind,' *id.* at H1848 (daily ed. March 21, 1984) (statement of Representative Kindness)."

*In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1 Cir.1987) (Breyer, J.).

█ Moreover, § 157(b)(3) provides additional support for our conclusion that Congress intended a narrow reading of *Marathon*. That section provides in relevant part that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." We read that as a demonstration of Congress' intent that bankruptcy courts are not precluded from adjudicating state-law claims when such claims are at the heart of the administration of the bankrupt estate.

### (B)

█ With this in mind, our task is to determine whether this adversary proceeding, which arose after Cooper filed its Chapter 11 petition and which is founded on state contract law, falls within "the core of the federal bankruptcy power." *Marathon, supra,* 458 U.S. at 71.

Section 301 of the Bankruptcy Code provides:

"A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."

11 U.S.C. § 301 (1988). The filing of the petition sets in motion several events. Most significant, from the standpoint of the instant appeal, it creates the "estate" for bankruptcy purposes. 11 U.S.C. § 541(a) (1988). The Supreme Court has stated, in construing the direct predecessor to § 541(a), that

" 'the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition.' "

*Goggin v. Division of Labor Law Enforcement,* 336 U.S. 118, 125–26 (1949) (quoting *Everett v. Judson,* 228 U.S. 474, 479 (1913)); *see also Kohn v. Myers,* 266 F.2d 353, 355 (2 Cir.1959); *Lockhart v. Garden City Bank & Trust Co.,* 116 F.2d 658, 661 (2 Cir.1940). Moreover, in addition to creating estate property, the filing date adjusts "the rights of others connected with the proceeding." King, 4 Collier on Bankruptcy ¶ 541.04, at 541–22 (15th ed. 1989). Logically, a post-petition contract that has as its subject matter an estate asset must be analyzed differently than one arising pre-petition.

The First Circuit, in *Arnold Print Works, supra,* recently held that post-petition contract claims are core. *Arnold Print Works* observed that, historically, trustees and debtors-in-possession (Cooper's status) have been viewed for various purposes as officers of the bankruptcy court. 815 F.2d at 169–70. Post-petition contracts with the debtor-in-possession, therefore, are integral to the estate administration from the date they are entered into. *Id.; In re Baker & Getty Financial Servs. Inc.,* 88 B.R. 137, 139–40 (Bankr. N.D.Ohio 1988); *In re Franklin Computer Corp.,* 60 B.R. 795, 800–01 (Bankr.E.D.Pa. 1986). We find the reasoning of *Arnold Print Works* especially persuasive in light of the facts of the instant appeal: the Georgia facility was an asset of the estate; Cooper's reorganization plan promised adequate insurance for the estate assets; the bankruptcy court's confirmation of the plan was premised on adequate insurance; and appellees were aware that they were dealing with a debtor-in-possession and that the subject matter of the policy was an asset of the estate. *Cf. In re Mike Burns Inn, Inc.,* 70 B.R. 863 (Bankr.D.Mass.1987) (post-petition claim on insurance policy acquired post-petition is core); *In re Heaven Sent, Ltd.,* 50 B.R. 636 (Bankr.E.D.Pa. 1985) (action to maintain insurance is core).

It is difficult to conceive of a claim, at least one arising outside of the substantive law of bankruptcy, that would be more intrinsic to estate administration.

We hold, therefore, that the bankruptcy court has core jurisdiction, pursuant to § 157(b)(2)(A), over contract claims under state law when the contract was entered into post-petition. The adjudication of such claims is an essential part of administering the estate. We read *Marathon* to apply to claims arising *pre-petition,* and decline to apply that ruling to claims involving contracts entered into post-petition. Similarly, we distinguish those lower court cases cited by appellees that, relying on *Marathon,* hold pre-petition claims to be non-core. *E.g., In re Pied Piper Casuals, Inc.,* 65 B.R. 780 (S.D.N.Y.1986); *In re Blue Point Carpet, Inc.,* 86 B.R. 327 (Bankr.E.D.N.Y. 1988); *Acolyte Electric Corp. v. City of New York,* 69 B.R. 155 (Bankr.E.D.N.Y. 1986), *aff'd,* No. 86–0329 (E.D.N.Y.1987).

We are aware that language from opinions of two other circuits may be read to disagree with our holding. In one, *In re Castlerock Properties,* 781 F.2d 159 (9 Cir. 1986), the contract apparently existed pre-petition. It is therefore unlikely that its holding that the proceeding in question was non-core conflicts with our holding on the instant appeal. In any event, we decline to follow the sweeping statement in *Castlerock* that

> "state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)(–)(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § [sic] 157(b)(2)(A) and (O)."

*Id.* at 162. Such a reading of the statute in our view would render the general provisions null.

The Fifth Circuit stated in *In re Wood, supra,* 825 F.2d at 97, that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." The court held that a claim under state law

arising from a post-petition dispute did not fit either category. The instant appeal does not fit in the first category. We hold that the timing of a dispute may render it uniquely a bankruptcy case. To the extent that *Wood* conflicts with our holding, we decline to follow it.

### III.

Having held that the bankruptcy court has jurisdiction over the adversary proceeding as a core matter, we turn to the question whether appellees are entitled to a jury trial on the factual issues raised, i.e., whether Cooper misrepresented the nature of the facility in its insurance application and whether it exaggerated its loss from the fire.

### (A)

In its decision, the district court stated that "[t]he defendants are entitled to a jury trial with respect to at least some of the debtor's claims and their affirmative defenses." That ruling made no reference to *Granfinanciera, S.A. v. Nordberg,* 109 S.Ct. 2782 (1989), decided only two weeks earlier. Since that case weighs heavily on the instant appeal, we address it in depth.

In *Granfinanciera,* the respondent, a Chapter 11 trustee, sued the petitioners in the bankruptcy court to recover fraudulent transfers allegedly made by the bankrupt corporation. Section 157(b)(2)(H) explicitly provides that actions to recover fraudulent conveyances are core proceedings. The bankruptcy court therefore held that it could hear the action without a jury, despite the petitioners' demand for a jury trial. The district court and the court of appeals both affirmed. The Supreme Court, however, in a somewhat opaque opinion, reversed.

One aspect of the Supreme Court opinion is clear—that is, when a party makes a jury demand for a claim that is inherently legal, "Congress cannot eliminate [that] party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an adminis-

trative agency or a specialized court of equity." *Id.* at 2800. In other words, we are required to analyze the underlying nature of the claim without regard to Congress' designation of that claim as core.

The aspect of *Granfinanciera* that we find difficult to decipher is its expression of the Court's view whether the bankruptcy court can hold jury trials in proceedings that are both legal and, at the same time, core pursuant to § 157(b). To be sure, the Court explicitly left that question open. *Id.* at 2802. But in its discussion of the questions it did address, there are several passages that can be construed as affecting the determination of that question.

One such passage is the discussion of the "public rights-private rights" dichotomy. To review, *Marathon* appeared to hold that Article I courts could adjudicate claims at the core of bankruptcy because such claims were public rights, and central to Congress' constitutional bankruptcy power. *Marathon, supra,* 458 U.S. at 71; *see also In re Kaiser,* 722 F.2d 1574, 1580 & n. 2 (2 Cir.1983). We say "appeared" only because *Granfinanciera* equivocated on that statement. 109 S.Ct. at 2797–98 & n. 11. *Granfinanciera,* in turn, premised its holding that a fraudulent conveyance action carries a Seventh Amendment right to a jury trial, at least in part, on its conclusion that such action is a private right. *Id.* at 2795–98. If, therefore, the Supreme Court held that all adversary proceedings sounding in law are private rights of action, a determination that the instant action is legal would compel us to hold that the proceeding is not core.

Fortunately, we need not read *Granfinanciera* so broadly. That opinion also contains several passages indicating the Court's contemplation that its holding may result in jury trials in the bankruptcy court. For example, the Court stated that

> "one cannot easily say that 'the jury would be incompatible' with bankruptcy proceedings, in view of Congress' express provision for jury trials in certain actions arising out of bankruptcy litigation. And Justice White's claim that juries may serve usefully as checks only on

the decisions of judges who enjoy life tenure overlooks the extent to which judges who are appointed for fixed terms may be beholden to Congress or executive officials, and thus ignores the potential for juries to exercise beneficial restraint on their decisions."

*Id.* at 2801 (citations omitted). As this passage indicates, Justice White's dissenting opinion understood the majority as leaving the door open for jury trials in bankruptcy and criticized the majority for doing so. *Id.* at 2810–12 (White, J., dissenting).

In view of the foregoing, we find that *Granfinanciera* does not foreclose the possibility of jury trials in the bankruptcy court. We therefore will analyze the question anew; addressing first whether the claims on the instant appeal are inherently legal, and second whether any statutory or constitutional provision bars the bankruptcy court from conducting jury trials.

### (B)

In any action commenced in a federal court, "the right to a jury trial ... is to be determined as a matter of federal law." *Simler v. Conner,* 372 U.S. 221, 222 (1963) (per curiam). Before we analyze the federal law applicable to the issues raised on the instant appeal, we will review briefly the relevant facts. The parties do not dispute that, due to the fire, ICSP's alleged obligation under the policy has matured. ICSP believes that Cooper defrauded it, and accordingly has sued in the state court to have the policy rescinded and to have its obligations declared void. Cooper then sued in the bankruptcy court for a declaration that the policy was still valid and that ICSP is liable for the damages Cooper claims. Alternatively, Cooper claims that if the policy is declared void, the fault lies with KM and K & C, rendering them liable for Cooper's losses.

We reject Cooper's contention that, merely because ICSP arguably is seeking rescission, the nature of the action is equitable. We agree with Professor Moore, who states that when

"the insurer's liability under the policy has matured, the basic issues are legal. This is true whether the insurer sues to cancel the policy and the beneficiary counterclaims for recovery on the policy, or the beneficiary sues for recovery on the policy and the insurer defends and/or counterclaims for cancellation on the ground of fraud."

5 Moore's Federal Practice ¶ 38.23, at 38–200–01 (2d ed. 1988) (footnotes omitted); *see also American Life Ins. Co. v. Stewart*, 300 U.S. 203, 212 (1937); *Woods v. National Life and Accident Ins. Co.*, 347 F.2d 760, 767 (3 Cir.1965); *Ettelson v. Metropolitan Life Ins. Co.*, 137 F.2d 62, 65 (3 Cir.), *cert. denied*, 320 U.S. 777 (1943).

That the claim may be construed as a request for a declaratory judgment does not change matters. It is settled law that in a declaratory action, "the nature of the underlying dispute determines whether a jury trial is available." *In re Petition of Rosenman & Colin*, 850 F.2d 57, 60 (2 Cir.1988).

The argument of KM and K & C in favor of a jury trial is even more compelling. Cooper seeks damages from them for alleged negligence and malpractice. It is difficult to imagine a claim that is more inherently legal. Cooper makes little attempt to assert the contrary. The conclusion that "in an ordinary tort action ... the right of trial by jury is guaranteed by the Constitution," *United States v. Fotopulos*, 180 F.2d 631, 634 (9 Cir.1950), is so obvious that it hardly needs belaboring.

(C)

■ Since appellees have a right to a jury trial in this core proceeding, this brings us to the issue whether the bankruptcy court has statutory and constitutional authority to conduct such trials.

The relevant statutory provision, 28 U.S.C. § 1411 (1988), offers almost no guidance. The part of the statute applicable to voluntary petitions provides only that "this chapter and title 11 do not affect any right

to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim." *Id.* at § 1411(a). This provision does not even make clear whether jury trials are afforded for other actions, let alone the proper forum for those trials. Of course, *Granfinanciera* has clarified the former issue, holding that jury trials are to be afforded for all legal actions.

Despite the lack of a specific statutory provision, we nevertheless hold that the bankruptcy courts may conduct jury trials in core proceedings. This is the position taken by the majority of courts which have considered the issue. Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment*, 72 Minn.L.Rev. 967, 1027–34 (1988) (citing cases). The cases in support of this view are too numerous to cite; we mention only a few of the more comprehensive ones. *Dailey v. First Peoples Bank of N.J.*, 76 B.R. 963 (D.N.J.1987); *In re McCormick*, 67 B.R. 838 (D.Nev.1986); *In re Kroh*, 1989 WL 153045 (Bankr.W.D. Mo., Dec. 18, 1989); *In re Data Compass Corp.*, 92 B.R. 575 (Bankr.E.D.N.Y.1988).

Our holding rests on two separate but related provisions. The first provision is 28 U.S.C. § 151 (1988), which states that "[e]ach bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding." The second provision is § 157(b), which, as stated previously, gives bankruptcy judges the authority to conduct trials and issue final orders in core proceedings. *Granfinanciera* teaches that such proceedings, if legal in nature, are subject to the Seventh Amendment, but that opinion does not alter Congress' intent that they be heard by a bankruptcy court with authority to issue final orders. Construing the Bankruptcy Code to allow jury trials in the bankruptcy court is the only way to reconcile these various concerns.

At present, there is no specific procedure in the Bankruptcy Rules providing for jury

trials. For several years Rule 9015 prescribed a procedure for trials, but that rule was withdrawn in 1987 because bankruptcy courts were relying on it for substantive support for their right to conduct the trials. The Committee noted that " '[i]n the event the courts of appeals or the Supreme Court define a right to jury trial in any bankruptcy mattes [sic], a local rule in substantially the form of Rule 9015 can be adopted pending amendment of these rules.' " Gibson, *supra,* 72 Minn.L.Rev. at 1030 n. 296 (quoting Committee Note to Abrogation of Bankr.R. 9015). In the interim, many courts have relied on local rules or Rule 38, the analogous Federal Rule of Civil Procedure. *E.g., In re Kroh, supra; In re 222 Liberty Assocs.,* 99 B.R. 639, 643 (Bankr.E.D.Pa.1989); *In re W.G.M.C., Inc.,* 96 B.R. 5, 6 (Bankr.D.Me.1989); *In re Jackson,* 90 B.R. 126, 133 (Bankr.E.D.Pa.1988).

### (D)

■ The first possible constitutional hurdle to jury trials in the bankruptcy court is the Seventh Amendment, specifically the requirement that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. No reviewing court therefore may "redetermine facts found by the jury." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 359 (1962). Thus, the Seventh Amendment may well render unconstitutional jury trials in nonconsensual non-core proceedings, because of the requirement that findings of fact by the bankruptcy court be reviewed de novo by the district court. 28 U.S.C. § 157(c)(1). District court review of final orders in *core* proceedings, however, is limited to the analogous review that courts of appeals have over district courts. 28 U.S.C. § 158 (1988); *In re Daniels–Head & Assocs.,* 819 F.2d 914, 918–19 (9 Cir.1987). Since the jury verdict in a core proceeding is subject only to the traditional standards of appellate review, such proceeding does not violate the Seventh Amendment.

### (E)

■ Finally, we reach the question whether jury trials in the bankruptcy court violate Article III of the Constitution. The essential predicate question, even more fundamental, is whether the statutory authority of bankruptcy judges to enter final judgments in core proceedings runs afoul of Article III. The parties did not raise this issue on appeal, limiting themselves to the question of the interpretation of § 157(b). The conclusion that core jurisdiction is constitutional, however, is implicit in our analysis in Section II of this opinion. That is particularly true in light of our holding that *Marathon,* a case decided under Article III, is to be distinguished from the instant appeal. We therefore assume for the sake of this appeal that § 157(b) passes muster under Article III. *Cf. Arnold Print Works, supra,* 815 F.2d at 169 (holding explicitly that Article III "permits a non-Article III bankruptcy court to adjudicate post-petition claims related to administration or liquidation of a debtor's estate because the claims are both historically and factually distinguishable from those at issue in *Marathon* ").

If bankruptcy courts have the power to enter final judgments without violating Article III, it follows that jury verdicts in the bankruptcy courts do not violate Article III. The primary purpose of this Article is to ensure a federal judiciary free from pressure from the other branches of government. *E.g., Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 848 (1986); *United States v. Will,* 449 U.S. 200, 218 (1980). If anything, jurors are less likely to feel pressure from the executive and legislative branches than are bankruptcy judges, who depend on the other branches for reappointment to office. *Granfinanciera, supra,* 109 S.Ct. at 2801. Additionally, the practice of jury trials in Article I courts has been upheld when the authority of the Article I judges does not otherwise run afoul of Article III. *Pernell v. Southall Realty,* 416 U.S. 363 (1974) (local District of Columbia judges); *Collins v. Foreman,* 729 F.2d 108 (2 Cir.) (federal magistrates), *cert. denied,* 469 U.S. 870 (1984). We hold, therefore, that jury trials

in core proceedings in the bankruptcy court do not violate Article III.

## IV.

To summarize:

We hold that the adversary proceeding between Cooper and appellees is core within the meaning of § 157(b), and that the proceeding is properly before the bankruptcy court. We further hold that the issues underlying the proceeding are legal, entitling appellees to a jury trial, as they have demanded. Finally, finding no statutory or constitutional bar, we hold that the jury trial should be in the bankruptcy court.

Reversed and remanded.