In re Ashraf Fouad HASSAN,
Irina Hassan, Debtors.

Christopher J. Redmond, Trustee,
Kansas Express International,
Inc., Plaintiffs,

v.

Ashraf Fouad Hassan, Bilal Said, International Football Club, Inc., Overland Park Sports Complex, LLC, Terra Sports Group, LLC, Terra Venture, Inc., Terra Venture Investments, LLC, Analytical Management Laboratories, Inc., Mark Murphy, The Murphy Law Firm, P.A., Final Touch, Inc., Kansas City Limousine, Inc. and Budget Limousine, Al Moser, Diane Moser, Defendants.

Bankruptcy No. 04–20332–7.
Adversary No. 05–6215.

United States Bankruptcy Court,
D. Kansas.

Dec. 12, 2006.

See also 376 B.R. 1, 2007 WL 2705752.

Christopher J. Redmond, One Hallbrook Place, Leawood, KS, Kevin M. Bright, Mark T. Benedict, Scottie S. Kleypas, Husch & Eppenberger, LLC, Kansas City, MO, Eric J. Howe, Lisa A. Brunner, for Plaintiffs.

Frederick H. Riesmeyer, II, Spradley & Riesmeyer, Kansas City, MO, Richard C. Wallace, Evans & Mullinix, P.A., Shawnee, KS, Sharon L. Stolte, Stinson Morrison & Hecker L.L.P., Overland Park, KS, George D. Halper, McAnany, Van Cleave & Phillips, P.A., Roeland Park, KS, for Defendants.

Diane Moser, Overland Park, KS, pro se.

Al Moser, Overland Park, KS, pro se.

Kansas City Limousine, Inc. and Budget Limousine, Overland Park, KS, pro se.

Final Touch, Inc., Overland Park, KS, pro se.

## RECOMMENDATION TO THE DISTRICT COURT TO GRANT THE MURPHY DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE OF THIS ADVERSARY PROCEEDING

DALE L. SOMERS, Bankruptcy Judge.

This proceeding is before the Court on two motions to withdraw the reference of the proceeding for purposes of trial on the claims made against two of the defendants, based on their asserted right to a jury trial. Both motions, along with supporting briefs, were filed by defendants Mark Murphy and the Murphy Law Firm, P.A. The Plaintiff–Trustee [1] objected to the first motion only on the procedural ground that it was not timely. In September 2006, the Court ruled on another motion Murphy and his law firm had filed, and stated it would hold their motion to withdraw reference in abeyance until that ruling was complied with. The Trustee dismissed some of his claims, and then, in order to comply with the Court's ruling, he filed an amended complaint, adding four defendants to the proceeding. When Murphy and his firm answered the amended complaint, they also filed a second motion to withdraw the reference of this proceeding for purposes of trial. Except for changing the factual assertions to reflect the changes made by the Trustee's amended complaint, the second motion and supporting brief are identical to the first motion and brief. The Trustee objects to the second motion not only on the procedural

ground that it was not timely, but also on the substantive ground that the amended complaint asserts only claims on which the defendants have no right to a jury trial.

Murphy and his law firm appear by counsel George D. Halper, Daniel F. Church, and Byron A. Bowles of McAnany, Van Cleave & Phillips, P.A. The Trustee initially appeared by counsel Kasey A. Rogg, Kevin M. Bright, and Eric J. Howe of Husch & Eppenberger, LLC, but Trustee Christopher J. Redmond of the same firm later entered his appearance as an attorney for the Trustee as well, and Mr. Rogg and Mr. Howe withdrew. Another member of that firm, Lisa A. Brunner, is also listed on the Trustee's last pleading concerning the effort to withdraw reference. None of the other defendants has filed a response to either of the motions. Because the second motion simply amends the facts asserted in the first motion to reflect subsequent events, the Court considers them to be a single motion and will treat them as such in this recommendation. The Court has reviewed the relevant materials and is now ready to rule.

## FACTS

### 1. Historical Facts Alleged in Complaint

The Court's resolution of this dispute is governed by the allegations of the Trustee's complaint. For purposes of determining the jury trial rights asserted in the motions, it does not matter whether the allegations are true or not.

When the Debtors filed a Chapter 7 bankruptcy petition in February 2004, they owned all the stock of Kansas Express International, Inc. ("Kansas Express"),

---

1. Technically, the Trustee is acting both as the trustee of the Debtors' bankruptcy estate and as the owner of the stock of Kansas Express International, Inc., which became property of the estate when the Debtors filed their bankruptcy petition. But since he always advo-

cates a single position in both capacities, the Court will simply refer to him as "the Trustee," no matter which capacity might be relevant to the discussion at the moment, in order to make this recommendation easier to follow.

which became property of their bankruptcy estate. The Trustee alleges that post-petition, Debtor Ashraf Hassan ("Debtor") agreed to sell the stock to Al Moser for $550,000 ("the First Sale"). Attorney Mark Murphy and the Murphy Law Firm, P.A. ("the Murphy Defendants"), were involved in preparing papers dealing with the sale.

After Moser had paid some of the sale price but before the transaction was completed, he learned of the Debtors' bankruptcy case and contacted the Murphy Defendants about it. The Trustee alleges the agreement for the First Sale was then substantially modified so it appeared to be a sale of the Debtor's postpetition services, rather than the corporation's stock. The Trustee refers to the modified agreement as "the False Agreement." The parties signed the new agreement and Moser paid more of the sale price. The Trustee alleges the Murphy Defendants knew the False Agreement would be provided to the Trustee, and intended for him to rely on it to conclude the First Sale did not involve property of the Debtor's bankruptcy estate. Without disclosing the existence of the original agreement for the sale of the Kansas Express stock, the Debtor allegedly provided his bankruptcy attorney with a copy of the False Agreement and asked him to give it to the Trustee, which the attorney did. The Trustee claims the Debtor did this in an effort to mislead the Trustee about the true nature of the transaction. Within a few weeks of the First Sale, Moser rescinded the contract with the Debtor and demanded his money back, but the Debtor refused to repay him.

In February 2005, the Debtor allegedly received $86,000 from another buyer in a second sale of Kansas Express or its assets ("the Second Sale"). The Trustee claims the Murphy Defendants participated in or facilitated the Second Sale. The Trustee does not know what became of the proceeds of this sale.

Said and the Debtor allegedly hired the Murphy Defendants to represent defendant International Football Club, Inc. ("IFC"). The Trustee claims the Murphy Defendants drafted several versions of a shareholder agreement concerning IFC, and the respective ownership interests of Said and the Debtor. By June 2004, Said estimated he and the Debtor had each contributed $125,000 to IFC. The Debtor's investment included a significant portion of the proceeds of the First Sale in IFC, and helped IFC buy some land in Johnson County, Kansas. The Trustee claims both Said and IFC knew those proceeds belonged to the Debtors' bankruptcy estate.

Said and IFC allegedly tried to conceal from the Trustee their association with the Debtor and their receipt of the proceeds of the First Sale. According to the Trustee, Said used various other entities, defendants Overland Park Sports Group, LLC, Terra Sports Group, LLC, Terra Venture, Inc., Terra Venture Investments, LLC, and Analytical Management Laboratories, Inc., as facades for his business operations. The Trustee claims these entities are Said's alter egos, whose separate existence should be disregarded to prevent fraud or injustice. The Debtor or Said, or both of them, the Trustee adds, used these entities to try to keep the Debtors' bankruptcy estate from obtaining any of the proceeds of the First Sale.

## 2. Facts about this proceeding and a related state court lawsuit

In December 2005, the Trustee commenced this adversary proceeding against the Debtor, IFC, the Murphy Defendants, Said, and Said's alleged alter egos, seeking, among other things, to recover the proceeds of the Debtor's sales of Kansas Express. Due to a calendaring mix-up, the Murphy Defendants failed to obtain an

extension of time to answer the complaint, and the Trustee sought a default judgment. The Murphy Defendants opposed the default judgment, and asked to be allowed to file their answer out of time, conceding it had been due on January 9, 2006. On January 17, they filed their answer, and the Trustee then withdrew his motion for default judgment. An order formally allowing the untimely answer was filed a couple of weeks later. In the answer, the Murphy Defendants demanded a jury trial, but did not express any consent to have the bankruptcy judge conduct the trial. On May 22, 2006, four months after answering the complaint, they filed their first motion asking the District Court to withdraw the reference of the proceeding to this Court because of their asserted right to jury trial.

In March 2006, Moser, his wife, and two Kansas corporations[2] he owns (collectively "the Mosers") had commenced a suit in a Kansas state court, seeking, among other things, to recover the money paid for Kansas Express in the First Sale. On May 17, 2006, the Mosers amended their petition to add the Murphy Defendants as defendants in that suit. A short time later, the Murphy Defendants filed a motion in the Trustee's suit seeking to add the Mosers as defendants, which this Court ultimately granted. The Trustee dismissed some of the counts of his complaint, and then filed an amended complaint adding the Mosers as defendants.

In the amended complaint, the Trustee asserts twelve claims[3] for relief, but the Murphy Defendants consider only four of the claims to seek relief against them. The relevant ones are identified as Count V, Count VI, Count VIII,[4] and Count XI. In Count V, the Trustee alleges the Murphy Defendants, IFC, and the Debtor engaged in a civil conspiracy to defraud the Debtor's bankruptcy estate by disguising the true nature of the First Sale, and seeks to recover from all of them damages caused by the alleged fraud. In Count VI, the Trustee alleges the Murphy Defendants, IFC, and the Debtor engaged in a civil conspiracy to convert property of the bankruptcy estate, and seeks from all of them damages cause by the alleged conversion. In Count VIII, the Trustee alleges all the defendants converted property of the bankruptcy estate by exercising dominion and control over Kansas Express, and seeks to recover damages proximately caused by that conversion. In Count XI, the Trustee asks "[a]s set forth in Rule 7008(b) of the Rules of Bankruptcy Procedure" for an award of the attorney fees and expenses he has incurred in prosecuting this adversary proceeding. The Court notes that the Trustee does not allege the Murphy Defendants received any of the stock or other assets of Kansas Express, or received any of the money the Debtor received as a result of either the First Sale or the Second Sale. Instead, he claims the Murphy Defendants helped the Debtor engage in those transactions, even after they learned of the bankruptcy case and recognized the Debtor was trying to sell property that belonged to the bankruptcy estate.

The Murphy Defendants filed a timely answer to the amended complaint, and

---

**2.** The Court notes that the Trustee identifies one of these corporations by the unconventional name of "Kansas City Limousine, Inc. and Budget Limousine." The Mosers have not yet filed an answer, so they have not confirmed the corporation's name.

**3.** The counts are identified by Roman numerals, but two of them are identified as Count

VIII. As a result, the last three counts are identified as Counts IX, X, and XI, even though they are the tenth, eleventh, and twelfth counts.

**4.** The second Count VIII is the one involved here.

again asserted a demand for a jury trial. They did not express any consent to have the bankruptcy judge conduct the trial. On the same day they filed this answer, the Murphy Defendants filed a second motion to withdraw reference. As indicated earlier, this motion and the brief submitted with it were essentially identical to their first motion to withdraw reference.

The Murphy Defendants base their motion to withdraw reference on their asserted right to a jury trial on the claims the Trustee is asserting against them. They contend the claims are legal ones, seeking legal remedies and involving no public rights. They allege they have not asserted any claims against the bankruptcy estate, so the Trustee's claims against them do not arise as part of the claims-allowance process. The Trustee responds that the Murphy Defendants have no right to a jury trial because: (1) they waited too long to ask for a withdrawal of the reference of this proceeding to this Court; and (2) the Trustee's claims against the Murphy Defendants concern: (a) conduct that occurred postpetition, (b) their dealings with the Debtor, and (c) the effect of postpetition transfers on property of the estate. The Trustee adds that even if there is a right to a jury trial, the District Court should defer withdrawing the reference until the case is ready for trial.

## DISCUSSION

### I. The Timeliness of the Murphy Defendants' Demand for a Jury Trial

#### A. *Although the right to a jury trial in civil cases is a constitutional right, it can be waived with surprising ease.*

■ As relevant here, the Seventh Amendment to the Constitution provides:

"In Suits at common law, ... the right of trial by jury shall be preserved."[5] Federal Rule of Civil Procedure 38(a), made applicable by Bankruptcy Rule 9015(a), provides that this jury trial right "shall be preserved to the parties [in a civil case] inviolate." Despite this seemingly strong protection, the right to a jury trial can be waived by failing to make a timely demand "even though it was inadvertent and unintended and regardless of the explanation or excuse."[6] Subsection (b) of Civil Rule 38 provides that a demand for a jury trial on any issue for which a right to a jury trial exists may be made at any time after an action is commenced but "not later than 10 days after the service of the last pleading directed to such issue," and subsection (d) adds that the "failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury." So unless the Murphy Defendants' jury demand was timely, they have waived any right they may have had to a jury determination on any of the issues raised by the Trustee's complaint. As explained below, the Court concludes that the Murphy Defendants' jury demand was untimely, but recommends that the District Court excuse the resulting waiver of their jury trial right under the circumstances.

#### B. *The Murphy Defendants waived their jury trial right by failing to make a complete jury demand within the time fixed by Civil Rule 38(b).*

■ A consideration of Tenth Circuit case law about jury trial demands in bankruptcy proceedings exposes a flaw in the

**5.** U.S. Const. amend. VII, *reprinted in* U.S.C.A., U.S. Const. Ann. amend. 7–14 (West 1987).

**6.** 9 Wright & Miller, *Fed. Prac. & Pro.: Civil 2d*, § 2321 at 166 (1995).

Murphy Defendants' demand that renders it untimely. In 1990, in *Kaiser Steel Corporation v. Frates (In re Kaiser Steel Corp.)*,[7] the Tenth Circuit ruled that when Congress revised the bankruptcy jurisdiction scheme in the Bankruptcy Amendments and Federal Judgeships Act of 1984, it did not authorize bankruptcy judges to conduct jury trials. A few months later, in *Stainer v. Latimer (In re Latimer)*,[8] building on *Kaiser*, the Circuit held that parties who want a jury trial in proceedings brought in a bankruptcy court "must combine their request for a jury trial with a request for transfer to the district court," or be deemed to have waived the right to jury trial. In effect, this ruling means a demand for a jury trial in a bankruptcy proceeding is not complete until the party making the demand not only asks for a jury trial, but also does whatever might be necessary to bring the proceeding before a court that can conduct the jury trial the party wants. Because the defendants in *Latimer* had apparently never asked for the proceeding to be transferred to the district court, the Circuit did not explain whether the "combined" requests had to be made literally simultaneously, or could be made at different times but still constitute a timely demand for a jury trial.

■ In 1994, Congress amended 28 U.S.C.A. § 157 to add subsection (e), authorizing bankruptcy judges to conduct jury trials "if specially designated to exercise such jurisdiction by the district court

and with the express consent of all the parties." Since 1995, the District Court for the District of Kansas has authorized the District's bankruptcy judges to conduct jury trials when the parties have consented in writing to that procedure.[9] With these changes, part of the basis of the *Kaiser* decision is gone, and this Court can conduct some jury trials. But because *Latimer* declared that a timely demand for a jury trial in a bankruptcy proceeding has two parts—(1) asking for a jury trial and (2) taking action necessary to bring the proceeding before a judge who can conduct the jury trial—and this Court still cannot conduct a jury trial without the parties' consent, it seems likely the Tenth Circuit will continue to follow *Latimer* and hold that an effective demand for a jury trial in a bankruptcy proceeding consists of two parts. For a party who wants to have a jury trial conducted by the district court, as the Murphy Defendants do here, the two parts would be the same as those required by *Latimer*, a combined demand for jury trial and a motion to withdraw reference. For a party who wants to have a jury trial conducted by the bankruptcy court, the two parts would be a combined demand for jury trial and a written consent to trial before the bankruptcy court.[10] In either situation, the failure to complete both parts in the time allowed would be deemed to be a waiver of the jury trial.

■ Taking this view of *Latimer* does leave the question whether the two parts

---

**7.** 911 F.2d 380, 389–92 (10th Cir.1990), *overruled in part on other grounds in Connecticut National Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The Supreme Court overruled a part of *Kaiser* concerning appellate jurisdiction under 28 U.S.C.A. § 1292, not the part about bankruptcy judges' lack of authority to conduct jury trials.

**8.** 918 F.2d 136, 137 (10th Cir.1990) (*per curiam*).

**9.** *See* D.Kan. Local R. 83.8.13(b) (amended Feb. 10, 1995).

**10.** Although all the parties must expressly consent before a bankruptcy judge can conduct a jury trial, the party seeking a jury trial should not be required to obtain all the parties' consent within Rule 38(b)'s time limit, but only the consent the party itself can give.

of a jury trial demand must be completed at the same time, or can be done separately so long as both are completed within applicable time limits. There seems to be no reason to conclude a party seeking a jury trial can waive the right to one before the time for making a demand for one has passed, just because the party completes one of the two requirements before doing the other. Because the two parts together constitute a complete jury trial demand, the time limit that should apply is the one found in Civil Rule 38(b) for making such a demand: "10 days after the service of the last pleading directed to" any issue triable of right by a jury. Civil Rule 7(a), made applicable by Bankruptcy Rule 7007, specifies what filings are considered to be "pleadings" under the Rules, and adds, "No other pleading shall be allowed" except by a court order.

■ Setting aside for the moment the Trustee's amended complaint and subsequent responses, his original complaint and the Murphy Defendants' answer to that complaint would be the filings in this proceeding that qualify as "pleadings" under Rule 7, and the Murphy Defendant's original answer would be the "last pleading directed to" any jury triable issues in this proceeding. As noted earlier, the Murphy Defendants filed their first motion asking the District Court to withdraw the reference four months after they served their answer, outside the time limit set by Rule 38(b).[11] To repeat, Rule 38(d) provides

that the failure to meet the time limit "constitutes a waiver by the party of a trial by jury." Before the Trustee filed his amended complaint, then, and even though the Murphy Defendants' request for a jury trial was timely under Rule 38(b) since they included it in their original answer, their completed jury trial demand was not timely under the rule because their motion to withdraw reference was filed outside the 10–day time limit. So, before the Trustee filed his amended complaint, the Murphy Defendants had waived their right to jury trial on the claims asserted in the original complaint. The fact the Trustee later amended his complaint did not revive the jury trial rights the Murphy Defendants had already waived because no new claims were asserted against them in the new complaint.[12]

## C. The Bankruptcy Court recommends that the District Court exercise its discretion to excuse the Murphy Defendants' inadvertent waiver of their jury trial right.

■ Civil Rule 39(b), made applicable by Bankruptcy Rule 9015(a), gives the District Court discretion to order a trial by a jury on any or all issues that a party could, by making a timely demand, have required to be tried by jury. While the rule nominally requires a motion to invoke the Court's discretion, any request that brings the question to the attention of the Court

---

11. District of Kansas Local Rule 83.8.6(c) specifies that parties like the Murphy Defendants are to file a motion to withdraw reference within 20 days after entering an appearance or being served with a summons or notice. This might be construed to have given them 10 more days after Rule 38(b)'s deadline expired to file their motion. However, even if this more generous deadline applied, they missed it by several months.

12. See *Williams v. Farmers & Merchants Ins. Co.*, 457 F.2d 37, 38 (8th Cir.1972) (once jury trial right is waived, amendments to pleadings revive it only if new issues are raised in amendments); cf. *Dill v. City of Edmond, Oklahoma*, 155 F.3d 1193, 1208 (10th Cir. 1998) (district court did not abuse discretion by denying motion under Rule 39(b) to conduct jury trial despite failure to make timely demand as to some claims and defendants, even though jury trial was held on claims added later against new defendants).

and the other parties is sufficient to authorize the District Court to exercise its discretion under the rule.[13]   The Tenth Circuit has said that a motion under Rule 39(b) should be granted in the absence of " 'strong and compelling' reasons to the contrary.' "[14] The Circuit has also held under this standard that a trial court did not abuse its discretion by denying a defendant's jury trial request that was made more than two years after the lawsuit was filed when the only excuse for the delay was a mistaken assumption, given the nature of the case, that the plaintiff had asked for a jury trial, an error the Circuit described as "mere inadvertence." [15]

■■■■■ The Tenth Circuit's ruling in *Latimer* that merely asking for a jury trial in the time allotted for making that request is not enough in bankruptcy proceedings to constitute a timely jury trial demand creates a tricky procedural trap; a party's failure to comply with it should not be considered a "strong and compelling reason" to deny their jury trial request, especially where other parties were timely alerted to their desire to have a jury trial. The Trustee has not suggested he would suffer any prejudice by being required to try his claims to a jury, or offered any other reason to deny the request due to its tardiness.   Under the circumstances, it seems the District Court should exercise its discretion to grant the Murphy Defendants' late request for a jury trial on any issues subject to the jury trial right.

## II.   The Murphy Defendants' Right to a Jury Trial on the Claims the Trustee Is Asserting

### A.   General guidelines for determining whether a jury trial right exists.

■■■■■ The jury trial right that the Seventh Amendment preserves depends on the now-historical distinction between legal and equitable claims.[16] A leading treatise on federal civil procedure calls distinguishing between matters that were triable at law and those that were triable in equity in 1791, when the Amendment was adopted, "one of the most perplexing questions of trial administration." [17]   Because the English law and equity systems overlapped a great deal in 1791, the line dividing law and equity was not very clear then.[18]   And since the law and equity jurisdictions of the federal courts were merged in 1938 with the adoption of the Federal Rules, leaving the jury trial right as the only area where the distinction remains important,[19] distinguishing historically legal claims from equitable ones becomes more and more difficult as time goes by.   In addition, because equity was always a supple-

**13.**   *FDIC v. Palermo*, 815 F.2d 1329, 1333–34 (10th Cir.1987) (request in pretrial memorandum filed many months before trial was sufficient to authorize court to grant jury trial under Rule 39(b)).

**14.**   *Green Const. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1011 (10th Cir.1993) (quoting *AMF Tuboscope, Inc. v. Cunningham*, 352 F.2d 150, 155 (10th Cir.1965) and applying statement in reviewing grant of late request for jury trial).   In *AMF Tuboscope*, the Circuit declared the trial court's decision to deny the parties' joint, but untimely, request for a jury trial based on the erroneous conclusion they

had no right to a jury trial and the court's own reluctance to conduct a jury trial was an abuse of discretion.

**15.**   *Nissan Motor Corp. v. Burciaga*, 982 F.2d 408, 409 (10th Cir.1992) (*per curiam*).

**16.**   9 Wright & Miller, *Fed. Prac. & Pro.: Civil 2d*, § 2301 at 10–12, § 2302 at 17–18 (1995).

**17.**   *Id.* § 2302 at 18.

**18.**   *Id.* at 18–19.

**19.**   *Id.* at 19.

mental system that acted only when the law courts were not able to provide an adequate remedy, the claims to which the jury trial right attaches have expanded over the years as common law procedures and remedies have been broadened.[20] To help protect the jury trial right, where a legal claim and an equitable claim that are asserted in the same case have a factual issue in common, the legal claim must be tried to a jury before the equitable claim is decided so that principles of former adjudication will not bar the jury from deciding the issue.[21]

▆▆▆ In *Granfinanciera v. Nordberg*,[22] the Supreme Court considered whether defendants who were sued by a bankruptcy trustee to recover prepetition transfers alleged to have been fraudulent were entitled to a jury trial. The Court noted that the Seventh Amendment not only preserves the jury trial right for suits to determine rights that would have been brought in the law, rather than equity, courts of England in 1791, but also extends it to actions brought to enforce statutory rights that are analogous to common-law causes of action that would ordinarily have been decided at that time by those law courts.[23] Then the Court summarized its approach to the question before it:

> The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481

U.S. 412, 417–18[, 107 S.Ct. 1831, 95 L.Ed.2d 365] (1987) (citations omitted). The second stage of this analysis is more important than the first. *Id.* at 421[, 107 S.Ct. 1831]. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.[24]

Only legal claims, or causes of action, carry a right to jury trial and, under *Granfinanciera*, the first two steps in deciding whether a jury trial right attaches are to determine: (1) whether, when the Seventh Amendment was adopted, the cause of action would have been considered to be legal, rather than equitable, or is a new cause of action analogous to one then considered to be legal; and (2) whether the remedy sought is legal, rather than equitable. If those steps indicate a jury trial right attaches and the cause of action is one Congress created by statute, a third step is required if Congress has assigned the authority to resolve the cause of action to a court or other decision-maker that does not use juries and has not been established under Article III of the Constitution. This final step is to decide whether the Constitution permits Congress to assign the claim to that decision-maker.

▆▆ The third part of the *Granfinanciera* analysis was necessary because under the statutes applicable to the case, Congress had called fraudulent conveyance actions "core proceedings," which meant

---

20. *Id.* § 2302.1 at 24–25.

21. *See* 9 Wright & Miller, *Fed. Prac. & Pro.: Civil 2d*, § 2302.1 at 25–29 (1995) (analyzing Supreme Court's decision in *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)).

22. 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

23. *Id.* at 40–42, 109 S.Ct. 2782.

24. *Id.* at 42, 109 S.Ct. 2782 (footnote omitted).

that on referral from a district court, a bankruptcy judge could adjudicate the action and issue a final judgment, but Congress had not authorized bankruptcy judges to conduct jury trials.[25] In other words, by designating the action a core proceeding, Congress had effectively declared that it would be tried by a non-Article III court without a jury. Under today's statutes and rules, though, as discussed earlier, no party with a Seventh Amendment right to a jury trial on an issue can be forced to litigate that issue in a bench trial before a bankruptcy judge. For the issue to be tried before the bankruptcy judge, the party must consent to have the jury trial held by that court; otherwise, the jury trial must be held by a district judge.[26] Consequently, under current bankruptcy procedures, the Defendants' right to a jury trial is not affected by whether the Trustee's claims are "core proceedings" under 28 U.S.C.A. § 157(b).

The Trustee concedes the claims he is asserting against the Murphy Defendants are state law ones, but argues the Court has full judicial power to issue final orders concerning them because they are "core" matters under 28 U.S.C.A. § 157(b)(1), so the Murphy Defendants have no jury trial right on any of the claims. Section 157(b)(1) authorizes bankruptcy judges to finally determine matters referred to them by the district courts that are "cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." But, as stated above, the extent of the Court's power to rule on claims does not determine whether the claims carry a jury trial right.[27] The Court believes that question requires it to apply the first two parts of the *Granfinanciera* test.

**B. Are the Trustee's claims against the Murphy Defendants legal ones?**

**1. Count V—Civil conspiracy to defraud estate**

In Count V, the Trustee alleges the Murphy Defendants conspired with IFC and the Debtor to defraud the bankruptcy estate by disguising the true nature of the First Sale, and seeks to recover damages caused by the conspiracy. A claim based on an alleged civil conspiracy is a legal claim.[28] Money damages are usually considered to be a legal remedy.[29] Many years ago, the Supreme Court de-

---

**25.** *See id.* at 40, n. 3 (noting lack of statutory authority for the bankruptcy judge to conduct jury trial in this case) & at 49–50, 109 S.Ct. 2782 (noting designation of fraudulent conveyance actions as "core proceedings" and effect of that designation on bankruptcy judges' authority to issue final judgments).

**26.** *See* 28 U.S.C.A. § 157(e); Bankruptcy Rule 9015(b).

**27.** *Granfinanciera v. Nordberg*, 492 U.S. 33, 60–61, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (Congress cannot eliminate party's right to jury trial on claim by relabeling it as "core" and placing exclusive jurisdiction in specialized court of equity); *see also, e.g., Ben Cooper, Inc. v. Insurance Co. (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1400–02 (2d Cir.1990) (after determining state law claims on postpe-

tition contract were core matters, circuit considered whether defendants were entitled to jury trial); *Commercial Fin. Servs., Inc. v. Brady (In re Commercial Fin. Servs., Inc.)*, 239 B.R. 586, 596 (Bankr.N.D.Okla.1999) (determination whether claims are "core" under § 157 does not determine jury trial right).

**28.** *Hays v. Equitex, Inc. (In re RDM Sports Group, Inc.)*, 260 B.R. 915, 919 (Bankr. N.D.Ga.2001); *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 512–13, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (right to jury trial applied to claim for treble damages cause by alleged conspiracy to violate antitrust laws).

**29.** *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 136 (2d Cir.1991).

clared that a claim for damages based on an alleged conspiracy to defraud was a legal one.[30] The Court recommends that the District Court conclude the right to jury trial attaches to this count of the Trustee's complaint.

### 2. Count VI—Civil conspiracy to convert estate property

■ In Count VI, the Trustee alleges the Murphy Defendants conspired with IFC and the Debtor to convert property of the estate, and seeks to recover damages caused by the conspiracy. The Court is aware of nothing that should distinguish the nature of this claim from the legal nature of a claim for damages caused by a conspiracy to defraud. Like Count V, then, this claim appears to be a legal claim seeking a legal remedy. The Court recommends that the District Court conclude the right to jury trial attaches to this count of the Trustee's complaint.

### 3. Count VIII—Conversion of estate property

■ In Count VIII, the Trustee alleges the Murphy Defendants (along with all the other defendants) exercised control over Kansas Express and dealt with it as if it were not property of the estate, ultimately destroying the corporation's value, and seeks damages for this conversion of property of the estate. The Supreme Court has stated that a claim for conversion of personal property was "unmistakably" an action at law for which the Seventh Amendment gave the parties a jury trial right.[31] The Court recommends that the District Court conclude the right to jury

trial attaches to this count of the Trustee's complaint.

### 4. Count XI—Attorney fees

■ In Count XI, the Trustee asks for an award of attorney fees and expenses incurred in prosecuting this suit, citing only Bankruptcy Rule 7008(b) as authority for the claim. Rule 7008(b) provides: "A request for an award of attorney's fees shall be pleaded as a claim in a complaint [or other pleading] as may be appropriate." While this rule specifies how to ask for attorney fees in an adversary proceeding, it does not appear to authorize an award to be made. In Tuloil, Inc., v. Shahid (In re Shahid), the Tenth Circuit Bankruptcy Appellate Panel explained that attorney fees are not generally taxable as costs or recoverable as damages unless authorized by statute or an enforceable contract.[32] The court also stated that while Bankruptcy Rule 7054(b) provides for an award of costs, the adversary rules contain no provision for an award of attorney fees.[33] In Seimer v. Nangle (In re Nangle), the Eighth Circuit Bankruptcy Appellate Panel explained that the general "American Rule" is that the parties to litigation must bear the cost of their own attorney fees unless a statute or contract provides otherwise.[34] The court went on to identify four provisions in the Bankruptcy Code, §§ 506(b), 303(i), 362(h), and 523(d), that authorize awards of attorney fees in certain circumstances, and further identified two limited exceptions to the American Rule that can also apply in bankruptcy, the common benefit or common fund exception, and the bad faith litigation practices exception (probably

---

**30.** *Curriden v. Middleton,* 232 U.S. 633, 635–36, 34 S.Ct. 458, 58 L.Ed. 765 (1914).

**31.** *Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

**32.** 254 B.R. 40, 43 (10th Cir. BAP 2000).

**33.** *Id.*

**34.** 281 B.R. 654, 657 (8th Cir. BAP 2002).

governed by Bankruptcy Rule 9011 in bankruptcy matters).[35] In line with this Court's reading of the rule, these decisions suggest that Rule 7008 does not provides substantive authority for an award of attorney fees.

The Trustee's failure to specify the substantive basis of his claim for attorney fees makes it impossible to determine whether the claim would have been considered a legal one or an equitable one by the courts of England in 1791. The fact he seeks a monetary award would suggest the claim is a legal one since money damages are a typical legal remedy. Under the circumstances, the Court recommends that the District Court conclude the right to jury trial attaches to this count of the Trustee's complaint.

## CONCLUSION

For these reasons, the Court recommends the District Court: (1) excuse the Murphy Defendants' inadvertent waiver of their jury trial right by their failure to make a timely motion to withdraw reference; and (2) determine the Murphy Defendants are entitled to a jury trial on Counts V, VI, VIII, and XI of the Trustee's complaint. Since a jury trial should be held and the Murphy Defendants do not consent to this Court presiding over such a trial, the District Court must withdraw the reference of any jury trial it orders to be held. However, because this Court has the power to handle pretrial matters even if a jury trial will eventually be required, the Court intends to carry on with pretrial matters until the District Court rules on the motion or directs otherwise.[36]

As indicated above, the jury trial on the Trustee's claims against the Murphy Defendants must occur before factual issues (if any) that are common to those claims and to the Trustee's claims against the other defendants can be presented in a bench trial. Obviously, most, if not all, of the factual issues that will be involved in the Trustee's four claims against the Murphy Defendants will be involved in his assertion of those four claims against the other defendants as well. In addition, most of the factual background of the eight claims not previously discussed in this recommendation is the same as for the claims against the Murphy Defendants. A review of the full complaint indicates some of the factual disputes arising from the claims against the Murphy Defendants are likely to be raised in litigating several of those eight claims, too. In Count I, the Trustee seeks under § 549 of the Bankruptcy Code to avoid the Debtor's postpetition transfers of money paid to him in the First and Second Sales, and in Count II, he seeks to recover from the defendants any transfers he avoids in Count I. Much of the evidence the Trustee will need to present to prove Counts I and II will also be needed to try to prove the Murphy Defendants should be liable under Count V for conspiring with other defendants to defraud the estate by hiding the nature of the First Sale, should be liable under Count VI for conspiring with other defendants to convert property of the estate by carrying out the First Sale, and should be liable under Count VIII for converting property of the estate by exercising dominion and control over Kansas Express and its assets. In Count IV, the Trustee seeks to require the defendants to turn property of the estate over to him, presumably (though not explicitly) referring to Kansas Express, its assets, and the proceeds of the First and Second

---

**35.** 281 B.R. at 658–59.

**36.** See Disbursing Agent v. Severson (In re Hardesty), 190 B.R. at 656–57 (even if jury trial must be held in district court, district court may decline to withdraw reference until case is trial-ready).

Sales. In Count IX, the Trustee asks the Court to impose a constructive trust on Kansas Express, its assets, and the proceeds any of the defendants received from the First or Second Sale. Counts IV and IX will probably involve much of the same evidence as Counts I, II, V, VI, and VIII, because the Trustee will have to trace property from both sales into the defendants' hands, so some of the same factual issues may arise in connection with them. Given these considerations, the Court further recommends that the District Court consider trying all the claims in one proceeding. This would save the parties from having to present much of the same evidence more than once, and promote judicial economy as well by having the judge who presides over the jury trial also decide any factual issues that will not be submitted to the jury.

**SO ORDERED.**